NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3209

GILBERT L. RODRIGUEZ,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Jose Salvador Tellez, of Laredo, Texas, argued for petitioner.

Allison Kidd-Miller, Trial Attorney, Commercial Litigation Branch, Civil Division, United States Department of Justice, of Washington, DC, argued for respondent. With her on the brief were Jeanne E. Davidson, Director, and Todd M. Hughes, Deputy Director. Of counsel on the brief was J. Douglas Whitaker, Administrative Law Attorney, Immigration and Customs Enforcement, United States Department of Homeland Security, of Omaha, Nebraska.

Appealed from: Merit Systems Protection Board

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3209

GILBERT L. RODRIGUEZ,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Petition for review of the Merit Systems Protection Board in DA0752070091-I-1.

_____

DECIDED: March 3, 2009

_____

Before LOURIE, DYK, and PROST, Circuit Judges.

Opinion for the court filed by Circuit Judge PROST. Concurring opinion filed by Circuit Judge DYK.

PROST, Circuit Judge.

Gilbert L. Rodriguez petitions for review of a final decision by the Merit Systems Protection Board ("Board") that sustained his removal by the Department of Homeland Security ("Agency"). Rodriguez v. Dep't of Homeland Sec., No. DA0752070091-I-1 (M.S.P.B. Jan. 31, 2008) ("Board Decision"). Because we discern no error in the Board's decision, we affirm.

BACKGROUND

In March 2001, the San Antonio District Office of the Department of Justice's Immigration and Naturalization Service ("INS") conducted an operation that resulted in the apprehension of about thirty-five illegal aliens. While taking the aliens into custody, three deportation officers severely injured Serafin Carrera, one of the apprehended aliens. Rodriguez, who was then a Detention Enforcement Officer ("DEO") responsible for transporting apprehended aliens, witnessed some of the events surrounding Carrera's injury. While Rodriguez was transporting other aliens to the San Antonio District Office (for processing prior to returning those individuals to Mexico), Rodriguez learned that Carrera had sustained a broken neck. When he arrived at the District Office, Rodriguez unplugged the camera from the Automated Biometric Identification System ("IDENT") and told his supervisor, Oscar Chapa, that the machine was not functioning. The IDENT machine allows a previously deported alien to be quickly and accurately identified once that individual's photograph, fingerprints, and personal biographical data are entered. As a result of Rodriguez's inaccurate statement to his supervisor, the aliens were not processed through IDENT.

The three deportation officers responsible for Carrera's injuries were later tried—and convicted—on criminal civil rights charges. Rodriguez testified during their trial, and, in his testimony, Rodriguez admitted to unplugging the IDENT machine on the day of Carrera's arrest and telling his supervisor that the machine was not functioning. After learning of his misconduct, the Agency removed Rodriguez, effective October 28, 2006, based on three charges: (1) making misstatements, (2) conduct unbecoming an officer, and (3) noncompliance with procedures, policies, and instructions. At the time of his

removal, Rodriguez was employed as a Deportation Officer for the Agency's Office of Immigration and Customs Enforcement ("ICE"), which replaced the INS when the Agency was created in March 2003.

Rodriguez, represented by an attorney, filed an appeal with the Board challenging his removal. Rodriguez also alleged that his removal was the result of reprisal for a whistleblowing activity. In an initial decision, the administrative judge sustained each of the three charges and the Agency's chosen penalty of removal, but refused to consider Rodriguez's whistleblower claim. Rodriguez v. Dep't of Homeland Sec., No. DA0752070091-I-1 (M.S.P.B. May 18, 2007) ("Initial Decision"). After Rodriguez petitioned for review, the Board found that the administrative judge erred by failing to accept the whistleblower claim as an affirmative defense, but that this error did not prejudice Rodriguez's substantive rights because Rodriguez failed to establish a prima facie case of whistleblower reprisal. Board Decision at 8-12. The Board sustained Rodriguez's removal, id. at 1, and Rodriguez appealed to this court.

## DISCUSSION

While this court has jurisdiction to review a final decision by the Board, our scope of review is limited. 5 U.S.C. § 7703(b)(1). We must affirm the decision by the Board unless we find it to be: "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." Id. § 7703(c); Walls v. Merit Sys. Prot. Bd., 29 F.3d 1578, 1581 (Fed. Cir. 1994). On appeal, Rodriguez presents three challenges to the Board's decision.

Rodriguez argues that the Agency failed to prove the third charge—noncompliance with procedures, policies, and instructions—because IDENTing was allegedly not part of the San Antonio District Office's normal procedures. The administrative judge, however, made a factual finding that, in March 2001, a procedure was in effect that required all aliens to be IDENTed before deportation. Initial Decision at 13. The administrative judge based this determination on substantial evidence, including the testimony of Marc Moore and the criminal trial testimony provided by Rodriguez. Id. at 9-13. On appeal, Rodriguez argues that Moore was biased, that his testimony is not credible, and that the administrative judge improperly discounted Oscar Chapa's testimony. The Board rejected these arguments, characterizing them as "mere disagreement with the AJ's explained credibility determinations." Board Decision at 8. We agree with the Board and see no reason to overturn the administrative judge's credibility determinations. See King v. Dep't of Health & Human Servs., 133 F.3d 1450, 1453 (Fed. Cir. 1998).

Also, Rodriguez alleges that the Agency did not present substantial evidence to support the charges because "taken in the totality of the circumstances, [Rodriguez's actions] had no affect on [the Agency's] operation" that day. Petr.'s Br. 11. We are not persuaded. The Board found that, because of Rodriguez's misstatement, the Agency did not enter the deported aliens' fingerprints, photographs, and personal biographical information into IDENT. Board Decision at 5. Accordingly, the Agency's ability to identify those individuals in the future was severely limited, and, as the Agency stated in the notice proposing removal, Rodriguez's misstatement evidenced a failure to use

good judgment, which "damaged the Agency's confidence in [his] ability to perform [his] duties."

Rodriguez admitted to making the misstatement (first charge), and the administrative judge found that the Agency proved that Rodriguez's actions constituted conduct unbecoming a law enforcement officer (second charge) and a failure to comply with procedures, policies, and instructions (third charge). Based on the record, we conclude that these findings are supported by substantial evidence.

B

Second, Rodriguez alleges that removal was an unreasonable penalty under the Douglas factors. Douglas v. Veterans Admin., 5 M.S.P.R. 280, 305-06 (1981). Rodriguez faults the deciding official for merely reviewing a file prepared by another department and alleges that the deciding official failed to consider "other factors involved in this case that could have served as mitigating circumstances." Rodriguez also argues that the deciding official should have given more or less weight to particular Douglas factors. Rodriguez, however, fails to identify any information that should have been—but was not—considered by the deciding official.

As noted by the administrative judge, the deciding official performed a detailed and reasonable Douglas-factor analysis. Initial Decision at 14-16. The administrative judge further found that Rodriguez's misconduct "was extremely serious and inconsistent with his duties and responsibilities as a law enforcement officer." Id. at 16; see also Watson v. Dep't of Justice, 64 F.3d 1524, 1530 (Fed. Cir. 1995) ("Law enforcement officers are held to a higher standard of conduct than are other federal employees . . . ."). In light of this record, we cannot conclude that "the severity of the

agency's action appears totally unwarranted in light of all factors." LaChance v. Devall, 178 F.3d 1246, 1251 (Fed. Cir. 1999) (quotation omitted). Accordingly, we will not overturn the Agency's penalty determination.

C

Finally, Rodriguez alleges that the Board erred in concluding that his March 26, 2001 memorandum was not a "protected disclosure" under the Whistleblower Protection Act ("WPA"). The WPA prohibits an agency from taking adverse personnel action because of an employee's "disclosure of information" that the employee "reasonably believes evidences . . . a violation of any law, rule, or regulation." 5 U.S.C. § 2302(b)(8)(A)(i). The Board found that Rodriguez's memorandum "does not meet the definition of protected disclosure under the WPA because it does contain any information that [Rodriguez] could have reasonably believed evidenced a violation of law or any other type of misconduct identified in 5 U.S.C. § 2302(b)(8)." Board Decision at 10-11. The Board further found that the memorandum contains a "sanitized version of the events . . . and actually creates the impression that government personnel assiduously attempted to safeguard Mr. Carrera's health." Id. at 11. Accordingly, the Board determined that Rodriguez failed to establish a prima facie case of whistleblower reprisal. Id. at 12. We agree.

Rodriguez also alleges that his testimony during the agents' criminal trial in 2003 constituted a disclosure protected by 5 U.S.C. § 2302(b)(9). As the Agency notes, however, the record before us shows that Rodriguez did not make this assertion before the Board and instead relied solely on the March 26, 2001 memorandum for the alleged protected disclosure. Rodriguez—who was represented by counsel both before the

Board and on appeal—provides us with no reason why we should entertain this allegation in the first instance on appeal. Accordingly, we conclude that Rodriguez waived this argument.

COSTS

Each party shall bear its own costs.

NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

2008-3209

GILBERT L. RODRIGUEZ,

Petitioner,

v.

DEPARTMENT OF HOMELAND SECURITY,

Respondent.

Petition for review of the Merit Systems Protection Board in DA0752070091-I-1.

DYK, <u>Circuit Judge</u>, concurring.

I join the majority opinion, but write separately to note the government's remarkable suggestion that Rodriguez's testimony during his fellow agents' criminal trial in 2003 was not protected activity—<u>i.e.</u>, that Rodriguez could have been removed for testifying. This is so, the government contends, because the testimony allegedly was given as part of Rodriguez's normal duties. Respondent's Br. at 30, 32-33 (citing <u>Huffman v. Office of Pers. Mgmt.</u>, 263 F.3d 1341, 1352-54 (Fed. Cir. 2001)).

That is plainly incorrect as a factual matter. Rodriguez was employed first as a Detention Enforcement Officer, where his primary responsibility appears to have been transporting detained aliens in a passenger bus, and later as a Deportation Officer. While his job responsibilities may have entailed testifying in court proceedings involving immigration matters, nothing in the record supports the government's bald assertion that Rodriguez "testified against his coworkers in the course of his normal job duties,

through normal channels." Id. at 33. Rodriguez's normal job duties did not consist of "the task of investigating and reporting wrongdoing by government employees," Huffman, 263 F.3d at 1352, much less testifying against them in criminal trials.

In any event, in my view disclosures in criminal trial testimony against an employee's coworkers could virtually never be said to be part of an employee's normal duties. They are protected activity within the meaning of the WPA. It cannot seriously be doubted that government employees who give such testimony against their coworkers put themselves at substantial risk of workplace retaliation. It is critically important that those employees be protected, and the WPA was designed to afford such protection.

Rodriguez's allegations of reprisal following his testimony are troubling. In May 2003, he gave key testimony leading to the conviction of three fellow INS agents who violated the civil rights of detainee Serafin Carrera. The Fifth Circuit affirmed the agents' convictions on January 17, 2006. United States v. Gonzales, 436 F.3d 560 (2006). Not until June 30, 2006, after those convictions had been affirmed by the Fifth Circuit, did the Agency propose Rodriguez's removal based on the statements made in his trial testimony that he had unplugged the IDENT machine on the day of Carrera's arrest. The timing of the personnel action against Rodriguez is, to say the least, suspicious. Nonetheless, I agree that Rodriguez did not raise this issue below, and so it is not properly before us.