**UNITED STATES OF AMERICA**
**MERIT SYSTEMS PROTECTION BOARD**
**2015 MSPB 67**

Docket No. PH-1221-14-0327-W-1

**Kenneth G. Mastrullo,**

**Appellant,**

**v.**

**Department of Labor,**

**Agency.**

December 31, 2015

Susan B. Conrad, Cambridge, Massachusetts, for the appellant.

Theresa Schneider Fromm, Esquire, Boston, Massachusetts, for the agency.

**BEFORE**

Susan Tsui Grundmann, Chairman
Mark A. Robbins, Member

**OPINION AND ORDER**

¶1    The appellant has filed a petition for review of the initial decision, which found that the Board lacks jurisdiction over some of the appellant's claims of whistleblower reprisal in this individual right of action (IRA) appeal and denied corrective action regarding the reprisal claims that are within the Board's jurisdiction. For the reasons discussed below, we VACATE the initial decision and REMAND the appeal to the administrative judge for further adjudication as described in this Opinion and Order.

BACKGROUND

¶2    The appellant resigned from his GS-13 Occupational Safety and Health Manager position with the agency's Occupational Safety and Health

Administration (OSHA), effective August 31, 2012. Initial Appeal File (IAF), Tab 5, Subtabs 4B, 4D. In March 2013, the appellant filed a complaint with the Office of Special Counsel (OSC) asserting that he was compelled to resign due to continuous harassment after he disclosed certain information to high level agency officials, initiated a Congressional inquiry, and filed charges with the agency's Office of Inspector General (OIG). IAF, Tab 19, OSC Claim Attachment (Att.) at 1.

¶3    His OSC complaint identified numerous alleged disclosures and retaliatory actions, which we summarize as follows. *Id.* at 1-19. On March 12, 2008, he reported to his supervisor that a coworker was stalking and harassing him because he would not join the coworker's complaint against the supervisor. *Id.* at 5-6. The appellant's concern was elevated to a regional administrator, who concluded, later that month, that the appellant had no reason to be concerned for his safety. *Id.* In August 2010, the appellant lodged a new "workforce violence complaint" against the coworker after he observed the coworker driving by his house. *Id.* The appellant alleged that the coworker was stalking and harassing him in retaliation for his 2008 complaint. *Id.* He raised his complaints with high level agency officials, including the Deputy Regional Administrator, and the matter also was referred to the OIG. *Id.* at 7. In the ensuing months, he made other similar complaints about the situation with his coworker, and a Congressman's office initiated an inquiry with the agency on his behalf. *Id.* at 7-11. The appellant claimed that the agency failed to effectively address his concerns about the coworker and instead, after his complaints, began to subject him to retaliatory actions, such as paying his travel vouchers at a lower rate than other employees, giving him unwarranted negative feedback about his performance during his Spring 2012 progress review, requiring him to submit a written request for flexiplace, and denying him a 40-hour time-off award. *Id.* at 6-14. On June 16, 2012, at the direction of the agency's equal employment opportunity (EEO) program manager, he filed a new retaliation complaint concerning his allegations

of harassment since March 2011. *Id.* at 15. This complaint was known to the EEO program manager, the Secretary of Labor, and the Assistant Secretary of Labor for OSHA. *Id.* On June 28, 2012, the EEO program manager informed him that his complaint would be "dismissed." *Id.* at 16-17.

¶4     According to the appellant, he felt compelled to resign at that point due to the frustrating and unsatisfactory responses to his complaints during the preceding 4 years, and his concern that the harassment and safety threat would continue. *Id.* at 17-18. He claimed that the agency improperly documented his separation as a voluntary retirement when the agency officials knew he was resigning involuntarily. *Id.* at 18-19; IAF, Tab 5, Subtabs 4B, 4D.

¶5     On September 10, 2013, OSC informed the appellant that it was closing its investigation. IAF, Tab 1 at 15. On November 12, 2013, the regional office received the appellant's Board appeal in which he alleged that, after his safety complaints, the agency's management "engaged in a long term course of retaliation and discrimination against [him] that eventually compelled [him] to resign." *Id.* at 3. The regional office docketed the matter as an IRA appeal. IAF, Tab 2.

¶6     During a prehearing conference, the administrative judge explained that, pursuant to *Covarrubias v. Social Security Administration*, 113 M.S.P.R. 583 (2010), *overruled by Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677 (2014),[1] an alleged involuntary retirement or resignation claim was not an action within the scope of an IRA appeal, but such a claim could be adjudicated as a potential adverse action under 5 U.S.C. chapter 75. IAF, Tab 38 at 8. Based on this statement of the law, and to avoid delaying the scheduled hearing to allow for the docketing of a chapter 75 appeal, the appellant agreed to proceed with

---

[1] At the time of the prehearing conference when the administrative judge relied on *Covarrubias*, 113 M.S.P.R. 583, the Board had not yet issued *Colbert*, 121 M.S.P.R. 677, which overruled *Covarrubias*.

adjudication of his IRA appeal without adjudication of the involuntary retirement/resignation claim. *Id.* The administrative judge informed the appellant of his burden of establishing jurisdiction over, and proving the merits of, his remaining claims in an IRA appeal. *Id.* at 1-6. Without making any explicit jurisdictional findings, the administrative judge then scheduled and held an evidentiary hearing.

¶7 After the hearing, the administrative judge issued an initial decision finding that the appellant failed to establish jurisdiction over some of his claims and failed to prove a prima facie case of whistleblower reprisal regarding the claims within the Board's purview. IAF, Tab 50, Initial Decision (ID). Specifically, the administrative judge determined that the appellant had pursued grievances in December 2010 and March 2011, concerning many of the actions raised in this appeal, such as the alleged hostile work environment created by his coworker driving by his house on August 19, 2010, and certain issues related to his flexiplace request and rejection of travel vouchers. ID at 7-9. The administrative judge concluded that, pursuant to 5 U.S.C. § 7121(g), the appellant's prior election to pursue a remedy through a negotiated grievance process precluded him from pursuing these same matters now in an IRA appeal, and thus his claims regarding these matters were outside the Board's jurisdiction. ID at 9. Alternatively, the administrative judge found that the appellant had not established jurisdiction over these claims as an IRA appeal because he had failed to make a nonfrivolous allegation that any of these matters constituted a "personnel action" as defined in 5 U.S.C. § 2302(a)(2)(A). ID at 9-10.

¶8 Similarly, the administrative judge concluded that the alleged retaliatory comments made during the appellant's Spring 2012 midterm progress review could not be a covered personnel action under section 2302, and thus, any claim regarding those comments "fails as a matter of law." ID at 10. Finally, the administrative judge found that the appellant failed to prove that any of his remaining alleged protected disclosures or activity was a contributing factor in

the issues related to the time-off award, and thus, he denied corrective action on the merits of that claim. ID at 10-12. The administrative judge did not adjudicate the appellant's involuntary resignation/retirement claim in the initial decision.

¶9 The appellant filed a petition for review, the agency filed a response, and the appellant filed a reply. Petition for Review (PFR) File, Tabs 1, 3-4. On review, the appellant challenges most of the administrative judge's conclusions. PFR File, Tab 1. Among other things, he argues that he should have been allowed to pursue both an IRA appeal and an involuntary resignation/retirement (constructive discharge) claim, he asserts that the administrative judge did not evaluate whether statements made to him during a midterm progress review meeting constituted a threatened personnel action, and he states that the administrative judge failed to properly consider the statutory knowledge/timing test for establishing the contributing factor element of his whistleblower claim. *Id.* at 2-5, Att.

## ANALYSIS

### The appellant is entitled to adjudication of his involuntary resignation/retirement claim in this IRA appeal.

¶10 After the record closed below, the Board issued a precedential decision holding that an involuntary resignation claim is cognizable in an IRA appeal. *Colbert*, 121 M.S.P.R. 677, ¶ 12 n.5. In doing so, the Board explicitly overruled *Covarrubias* on this point, finding that the underlying authority for that decision had been abrogated by statute. *Id.*; *see* 5 U.S.C. § 7121(g); *Agoranos v. Department of Justice*, 119 M.S.P.R. 498, ¶ 18 (2013). Thus, contrary to the statement of the law the administrative judge set forth during the prehearing conference, IAF, Tab 38 at 8, the appellant may pursue an involuntary resignation/retirement claim as a personnel action in an IRA appeal. Under these circumstances, we find that the appellant is not bound by his misinformed election to proceed with his IRA appeal without consideration of his involuntary

resignation/retirement claim, and we remand for further adjudication of that claim. *See Savage v. Department of the Army*, 122 M.S.P.R. 612, ¶¶ 16-18 (2015) (concluding that an appellant's election of remedies concerning her alleged constructive suspension was not binding under 5 U.S.C. § 7121(g) because the election was not knowing and voluntary).

¶11 During the processing of this appeal, the administrative judge gave the appellant an explicit opportunity to have his involuntary retirement/resignation claim docketed as a matter potentially within the Board's jurisdiction under 5 U.S.C. chapter 75.  IAF, Tab 38 at 8.  The appellant chose to forgo that option despite being informed that, as a consequence of his decision, the claim would not be adjudicated in this appeal and that any later appeal on those issues would be subject to dismissal.  *Id.*  Given this informed decision to forgo a potential chapter 75 appeal, the matter will be exclusively adjudicated as an IRA appeal on remand, as opposed to a potential chapter 75 appeal raising an affirmative defense of whistleblower reprisal.

The initial decision does not account for all of the alleged disclosures that the appellant identified in his OSC complaint.

¶12 Under the law in effect at the time of the material events in this appeal,[2] the Board has jurisdiction over an IRA appeal if the appellant has exhausted his administrative remedies before OSC and makes nonfrivolous allegations that: (1) he engaged in whistleblowing activity by making a protected disclosure, and (2) the disclosure was a contributing factor in the agency's decision to take or fail to take a personnel action.  *Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001).  After establishing the Board's jurisdiction in an IRA appeal, the appellant then must establish a prima facie case

---

[2] All of the relevant events, including the appellant's resignation, occurred before the December 27, 2012 effective date of the Whistleblower Protection Enhancement Act of 2012.  Pub. L. No. 112-199, § 202, 126 Stat. 1465, 1476.

of whistleblower retaliation by proving by preponderant evidence that he made a protected disclosure that was a contributing factor in a personnel action taken against him. 5 U.S.C. § 1221(e)(1); *Lu v. Department of Homeland Security*, 122 M.S.P.R. 335, ¶ 7 (2015). If the appellant makes out a prima facie case, then the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure. 5 U.S.C. § 1221(e)(1)-(2); *Lu*, 122 M.S.P.R. 335, ¶ 7.

¶13 As discussed above, the appellant identified numerous alleged disclosures in his OSC complaint, and we conclude that he has exhausted his administrative remedies regarding these alleged disclosures. *Supra* ¶¶ 3-4. In the initial decision, however, the administrative judge only addressed the appellant's assertion that the agency retaliated against him in response to his August 19, 2010 complaint. ID at 7-12. Moreover, the administrative judge did not state whether the appellant made a nonfrivolous allegation of a protected disclosure.

¶14 An initial decision must identify all material issues of fact and law, summarize the evidence, resolve issues of credibility, and include the administrative judge's conclusions of law and his legal reasoning, as well as the authorities on which that reasoning rests. *Spithaler v. Office of Personnel Management*, 1 M.S.P.R. 587, 589 (1980). Because the administrative judge failed to identify and analyze each of the appellant's alleged disclosures from his OSC complaint and he failed to articulate the relevant standard of proof, remand is appropriate. *See, e.g.*, *Briley v. National Archives and Records Administration*, 71 M.S.P.R. 211, 219-20 (1996) (remanding the appeal because, among other things, the administrative judge did not make specific findings regarding the nature of the disclosures). On remand, the administrative judge shall identify and analyze each alleged disclosure.[3] He also shall clarify whether

---

[3] The appellant stated in his deposition that he was not alleging that the agency retaliated against him or constructively discharged him in retaliation for his March 2008

he is making a jurisdictional finding or a finding on the merits, and apply the appropriate standard regarding each alleged disclosure.[4]

The appellant's assertion that his August 2010 complaint was a contributing factor in the agency's decision not to give him a 40-hour time-off award also must be remanded for further adjudication.[5]

¶15     Because the administrative judge held a hearing, he implicitly found that the appellant made a nonfrivolous allegation of a protected disclosure in his August 19, 2010 complaint that was a contributing factor in the agency's decision to take a personnel action against him.     Neither party challenges the administrative judge's implicit conclusion on review, and we find no reason to disturb it.     We further find that the appellant has proven by preponderant evidence that he reasonably believed that he was disclosing a violation of law, rule, or regulation in his August 19, 2010 and  August 20, 2010 incident reports,

complaint.    IAF, Tab 35 at 79.    On remand, the administrative judge shall either document the appellant's intention to withdraw or abandon such a claim or adjudicate it. *Cf. Wynn v. U.S. Postal Service*, 115 M.S.P.R. 146, ¶ 10 (2010) (finding that, before determining that an affirmative defense is withdrawn, an administrative judge must identify the defense, explain that the Board will no longer consider it when deciding the appeal, and give the appellant an opportunity to object to that determination).

[4] We find it appropriate for the administrative judge to clarify his analysis regarding each alleged disclosure before we reach the issue of whether 5 U.S.C. § 7121 bars any of the appellant's claims.  We note that some of the appellant's alleged disclosures post-dated his grievance activity, and thus, these disclosures may not be barred by section 7121.    *Compare* IAF, Tab 19, OSC Claim Att. at 1-19, *with* IAF, Tab 5, Subtab 4A.  On remand, the administrative judge shall address each alleged disclosure and make specific findings on this issue.

[5] The agency's decision not to give the appellant a 40-hour time-off award constitutes a personnel action.  *See* 5 U.S.C. § 2302(a)(2)(A)(ix) (defining a personnel action to include a "decision concerning pay, benefits, or awards"); *see also Hagen v. Department of Transportation*, 103 M.S.P.R. 595, ¶ 13 (2006) (holding that the denial of a cash award is a personnel action).  By contrast, the appellant has not persuaded us that the agency's failure to notify him of his receipt of an award prior to an awards ceremony constitutes a personnel action under 5 U.S.C. § 2302(a)(2)(A). *See King v. Department of Health & Human Services*, 133 F.3d 1450, 1452-53 (Fed. Cir. 1998) (stating that an action must have practical consequences for an employee to constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A)).

and in his August 23, 2010 memorandum to R.H., each of which discusses his coworker's allegedly harassing behavior dating back to approximately March 2008, up to and including the coworker's apparent decision to drive out of his way past the appellant's house on August 19, 2010. 5 U.S.C. § 2302(b)(8)(A)(i); IAF, Tab 19, OSC Claim Att. at 5-7, Tab 35 at 23-27, Tab 46, Exhibit (Ex.) 16; *see* Mass. Gen. Laws Ann., ch. 265, § 43A (defining the crime of criminal harassment in Massachusetts as willfully and maliciously engaging "in a knowing pattern of conduct or series of acts over a period of time directed at a specific person, which seriously alarms that person and would cause a reasonable person to suffer substantial emotional distress").

¶16     Having found that the appellant proved by preponderant evidence that he made protected disclosures in August 2010, we now turn to the contributing factor analysis. In the initial decision, the administrative judge found that the appellant did not meet his burden to prove a contributing factor as to the agency's failure to give him a 40-hour time-off award. ID at 10-12. For the following reasons, we reverse that finding.

¶17     The record reflects that the appellant and other members of a significant case team were given the Secretary's Exceptional Achievement Award in or around June 2012. IAF, Tab 19, OSC Claim Att. at 14, Tab 37, Ex. E. The record also reflects that many of the award recipients were given a 40-hour time-off award, but the appellant was given only a $150.00 cash award. IAF, Tab 5, Subtab 4H, Tab 35 at 297-99. The appellant asserted before OSC and below that the agency's failure to give him a 40-hour time-off award constituted a retaliatory action. IAF, Tab 19, OSC Claim Att. at 14.

¶18     To prove that a disclosure was a contributing factor in a personnel action, the appellant only need demonstrate that the fact of, or the content of, the protected disclosure was one of the factors that tended to affect the personnel action in any way. *Carey v. Department of Veterans Affairs*, 93 M.S.P.R. 676, ¶ 10 (2003). The knowledge/timing test allows an employee to demonstrate that

the disclosure was a contributing factor in a personnel action through circumstantial evidence, such as evidence that the official taking the personnel action knew of the disclosure, and that the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Id.*, ¶ 11; *see* 5 U.S.C. § 1221(e)(1). Once the knowledge/timing test has been met, an administrative judge must find that the appellant has shown that his whistleblowing was a contributing factor in the personnel action at issue, even if after a complete analysis of all of the evidence a reasonable factfinder could not conclude that the appellant's whistleblowing was a contributing factor in the personnel action. *Schnell v. Department of the Army*, 114 M.S.P.R. 83, ¶ 21 (2010).

¶19     Despite the fact that the administrative judge mentioned the knowledge/timing test in the initial decision, he did not evaluate whether the appellant satisfied this test. ID at 10-12. This was error. *See, e.g.*, *Gonzalez v. Department of Transportation*, 109 M.S.P.R. 250, ¶ 20 (2008).

¶20     We conclude that the appellant has proven that his August 2010 disclosures were a contributing factor in the agency's failure to give him a 40-hour time-off award in June 2012. The record reflects that R.H., the Deputy Regional Administrator whom the appellant asserts was responsible for issuing time-off awards for his office, was aware of his August 2010 disclosures. IAF, Tab 35 at 23-27, 80-90; Hearing Compact Disc (HCD). Thus, the knowledge component of the knowledge/timing test is satisfied.

¶21     The record further reflects that an investigation was conducted and, in December 2010, R.H. issued a notice of proposed suspension to the coworker based in part on the allegations that the appellant made against him in his August 2010 complaints, and the deciding official upheld this suspension in February 2011. IAF, Tab 15 at DOL 00015-DOL 00023, DOL 00055-DOL 00062. The Board has held that a personnel action taken within approximately 1 to 2 years of the appellant's disclosures satisfies the

knowledge/timing test. *Schnell*, 114 M.S.P.R. 83, ¶¶ 20-22; *see Redschlag v. Department of the Army*, 89 M.S.P.R. 589, ¶ 87 (2001) (finding that the appellant's disclosures were a contributing factor in her removal when they were made approximately 21 months and then slightly over a year before the agency removed her); *cf. Salinas v. Department of the Army*, 94 M.S.P.R. 54, ¶ 10 (2003) (finding that a delay of more than 2 years was too remote to satisfy the knowledge/timing test). Under the circumstances of this matter, including the ensuing agency investigation and decision to take disciplinary action against the coworker based in part on the allegations in the appellant's August 2010 complaints, we conclude that this time frame satisfies the timing component of the knowledge/timing test.[6]

¶22    Because we conclude that the appellant has satisfied his burden to prove by preponderant evidence that his August 2010 disclosures were a contributing factor in the agency's decision not to give him a 40-hour time-off award, we remand this claim to the regional office for the administrative judge to evaluate whether the agency proved by clear and convincing evidence that it would not have given him a 40-hour time-off award even if he did not make a protected disclosure. *See Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012) ("Evidence only clearly and convincingly supports a conclusion when it does so in the aggregate considering all the pertinent evidence in the record, and despite the evidence that fairly detracts from that conclusion."); *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

---

[6] On review, the appellant also alleges that R.H. was aware of his other complaints, including his safety complaint to the National Office and to his Congressman in 2011 and 2012. PFR File, Tab 1 at 10. To the extent that the administrative judge evaluates the knowledge/timing test as to any other disclosures and/or personnel actions, he shall do so in accordance with this Opinion and Order.

<u>We remand the appeal for the administrative judge to make findings and credibility determinations regarding the nature of J.M.'s statements to the appellant during the midterm progress review meeting and to determine whether the appellant proved that these statements constitute a threatened personnel action.</u>

¶23    In the initial decision, the administrative judge concluded that J.M.'s comments to the appellant during a midterm progress review meeting were "not a covered 'personnel action'" and that the appellant's claim "fails as a matter of law." ID at 10. In so concluding, the administrative judge relied on *King v. Department of Health & Human Services*, 133 F.3d 1450, 1452 (Fed. Cir. 1998), which distinguished between progress reports and performance evaluations. ID at 10. It is not clear whether, in reaching this conclusion, the administrative judge was finding that the appellant did not make a nonfrivolous allegation or whether he was denying corrective action with respect to this claim. He should articulate the basis for his decision on remand.[7]

¶24    The administrative judge also did not acknowledge or discuss the appellant's assertion that J.M.'s comments to him during the midterm progress review meeting constituted a threatened personnel action.[8] IAF, Tab 37 at 3; PFR File, Tab 1 at 5, Att. at 16, 18; *see* 5 U.S.C. § 2302(b)(8) (stating that it is a prohibited personnel practice to "threaten to take" a personnel action against any employee because of that employee's protected disclosure). The decision of the U.S. Court of Appeals for the Federal Circuit (Federal Circuit) in *King* did not discuss a threatened personnel action. Additionally, we are unaware of any precedent that would preclude us from considering the appellant's claim of a

---

[7] Regardless of the administrative judge's ultimate conclusion on this issue, J.M.'s alleged comments may constitute part of the totality of the circumstances related to the appellant's involuntary resignation/retirement claim. *See, e.g.*, *Markon v. Department of State*, 71 M.S.P.R. 574, 577-78 (1996).

[8] The appellant submitted his resignation letter before the end of the appraisal period, and thus, he was not issued a performance appraisal for the time frame in question.

threatened future performance appraisal as a threatened personnel action, even if it occurred during a midterm progress review meeting. *See Koch v. Securities & Exchange Commission*, 48 F. App'x 778, 787 (Fed. Cir. 2002) ("The line between a counseling measure and a threat is not a bright one, and the distinction between the two is very fact-dependent.");[9] *Special Counsel v. Spears*, 75 M.S.P.R. 639, 669 (1997) (acknowledging that there may be circumstances in which notice of a performance deficiency would be an implied threat to issue a retaliatory performance appraisal); *see also Special Counsel v. Hathaway*, 49 M.S.P.R. 595, 600, 608-09 (1991) (finding a threatened personnel action where an employee was informed that he should not expect a highly satisfactory rating the next year), *recons. denied*, 52 M.S.P.R. 375, *aff'd*, 981 F.2d 1237 (Fed. Cir. 1992).

¶25      We find that the appellant made a nonfrivolous allegation of Board jurisdiction over his claim of a threatened personnel action during the midyear performance review meeting.  The Board has found that the term "threaten" means, among other things, "to give signs of the approach of (something evil or unpleasant)," and that it should be given a "fairly broad interpretation" in this context.  *Gergick v. General Services Administration*, 43 M.S.P.R. 651, 656 (1990).  The appellant nonfrivolously alleged that he viewed J.M.'s statement about deficiencies in his work performance as a threat.  IAF, Tab 19, OSC Claim Att. at 15, Tab 35 at 268.

¶26      To meet the knowledge-timing test for the contributing factor criterion at the jurisdictional stage, the appellant must nonfrivolously allege that the official taking the personnel action knew of the appellant's disclosure and that the

---

[9] In *Koch*, 48 F. App'x at 787, the Federal Circuit affirmed in an unpublished decision the administrative judge's conclusion that the performance counseling memorandum issued to Mr. Koch, which provided him with examples of deficient performance and cautioned him that he would be removed if he did not make "immediate and profound improvements in [his] performance," did not constitute a threatened personnel action because it informed him of weaknesses in his performance and encouraged improvement.

personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure was a contributing factor in the personnel action. *Mason v. Department of Homeland Security*, 116 M.S.P.R. 135, ¶ 26 (2011). The appellant nonfrivolously alleged that J.M. had knowledge of his August 2010 disclosures and that the alleged threat during the midyear performance review meeting occurred in May 2012, which was 21 months after the August 2010 disclosures. IAF, Tab 27, Compact Disc at DOL 01988-DOL 01989, DOL 02449, Tab 35 at 40-41, 267-68, 275; *see Redschlag*, 89 M.S.P.R. 589, ¶ 87. Because the appellant has nonfrivolously alleged that he made a protected disclosure that was a contributing factor in the agency's decision to threaten to take a personnel action against him, he is entitled to a decision on the merits of this claim.

¶27    The record appears fully developed on this issue, and the appellant does not contend on review that he was unable to present evidence in support of this claim. It is appropriate for the administrative judge to make the merits determination in the first instance because there is conflicting evidence and testimony on this issue. In contrast to the appellant's evidence regarding J.M.'s statements during the midyear performance review meeting and the perceived significance attributed to those statements, J.M. denied using such words as "deficient," and he testified that he viewed the criticism during the midyear performance review meeting as a "blip on the radar." HCD. The administrative judge, as the hearing officer, is in the best position to make factual findings and detailed credibility assessments on this issue. *Lange v. Department of Justice*, 119 M.S.P.R. 625, ¶ 16 (2013); *see Hillen v. Department of the Army*, 35 M.S.P.R. 453, 458 (1987). On remand, the administrative judge shall make factual findings and credibility determinations on this issue and evaluate whether the appellant has proven by preponderant evidence that J.M.'s statements constitute a threatened personnel action. If the administrative judge determines that the appellant has met his burden in this regard, he shall evaluate the remaining elements of the appellant's

claim of reprisal for whistleblowing activity in accordance with this Opinion and Order.

<u>The administrative judge shall ensure that the evidentiary record is preserved.</u>

¶28     Our review of this matter revealed problems with the audio recording of the hearing.  Some of the testimony was inaudible at times, and we were entirely unable to hear a portion of the appellant's cross-examination.  The Board has held that when the verbatim hearing record omits material evidence necessary to adjudicate an appeal, the evidence must be taken again.  *Walker v. Office of Personnel Management*, 52 M.S.P.R. 101, 104 (1991).  Therefore, on remand, the administrative judge shall take steps to ensure that the record is properly preserved and, if necessary, take the omitted testimony again.  *See, e.g.*, *Gonzalez v. Department of the Army*, 40 M.S.P.R. 241, 249 n.3 (1989) (finding that limited readjudication was appropriate to obtain the testimony of witnesses whose original testimony was missing from the hearing tape).

## ORDER

¶29     For the reasons discussed above, we remand the appeal for further adjudication in accordance with this Opinion and Order.


FOR THE BOARD:


_____
William D. Spencer
Clerk of the Board
Washington, D.C.