NOTE:  This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**SUSAN M. MORRIS,**
*Petitioner*

**v.**

**ENVIRONMENTAL PROTECTION AGENCY,**
*Respondent*

---

2023-2248

---

Petition for review of the Merit Systems Protection Board in No. DC-1221-12-0749-B-1.

---

Decided:  June 25, 2025

---

ELLEN KYRIACOU RENAUD, Law Offices of Ellen K. Renaud, LLC, Alexandria, VA, argued for petitioner.  Also represented by RICHARD L. SWICK, Swick & Shapiro, P.C., Washington, DC.

ROBERT R. KIEPURA, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, argued for respondent.  Also represented by BRIAN M. BOYNTON, ELIZABETH MARIE HOSFORD, PATRICIA M. MCCARTHY.

---

Before REYNA, BRYSON, and STOLL, *Circuit Judges.*

STOLL, *Circuit Judge.*

Susan M. Morris petitions for review of the Merit Systems Protection Board's final order, in which the Board denied Ms. Morris's individual right of action appeal and concluded that the Environmental Protection Agency met its burden to show by clear and convincing evidence that it would have removed Ms. Morris notwithstanding Ms. Morris's protected disclosures. For the following reasons, we affirm.

BACKGROUND

Ms. Morris was employed as a supervisory GS-15 Assistant Director in the EPA's Office of Civil Rights (OCR). While in that position, Ms. Morris reported to Karen Higginbotham, the director of OCR. As part of her role, Ms. Morris was required to compile reports to comply with Management Directive 715 (MD-715) of the Equal Employment Opportunity Commission.

Relevant to this case are several communications and interactions between Ms. Morris and others at the EPA spanning from late 2009 to early 2010: (1) a series of emails between Ms. Morris and Ms. Higginbotham in December 2009 regarding OCR performance (the "December Emails"); (2) an incident and follow-up email related to Ms. Morris's management of a member of her staff; (3) an email and memorandum sent by Ms. Morris to the EPA's Office of General Counsel (OGC) (the "OGC Memo") informing OGC of the EPA's failure to file MD-715 reports; and (4) a conference call in January 2010 conducted by Ms. Higginbotham (the "January Conference Call").

On March 23, 2010, Ms. Higginbotham proposed Ms. Morris's removal from her position within OCR. In the Proposed Removal, Ms. Higginbotham listed four charges against Ms. Morris: (1) insubordination, (2) wrongful

disclosure of confidential personal information,[1] (3) misuse of supervisory authority, and (4) making inappropriate statements in a work product. For charge 1, Ms. Higginbotham listed three specifications. Specifications 1 and 2 related to instances of Ms. Morris violating Ms. Higginbotham's previous directive to "be 'civil' and . . . treat each other with respect" and listed two of the December Emails sent by Ms. Morris—dated December 11 and 14, 2009—as examples. J.A. 171–73. Specification 3 listed the January Conference Call, noting that Ms. Morris "flagrantly ignored" Ms. Higginbotham and made such a disturbance that it caused other OCR employees to express concern regarding Ms. Morris's behavior.

Charge 3 related to Ms. Morris's management of a staff member, contending that Ms. Morris's conduct "constitute[d] a misuse of [her] supervisory authority" and caused Ms. Higginbotham to intervene. J.A. 176. Charge 4 consisted of one specification that recounted the OGC Memo and claimed Ms. Morris used the memo to "attack [Ms. Higginbotham] in a series of misleading, derisive accusations." J.A. 176. The EPA subsequently removed Ms. Morris from her position.

Ms. Morris filed an individual right of action (IRA) appeal, alleging that her removal was in retaliation for protected disclosures she made in December 2009 and January 2010 related to (1) the EPA's failure to file the MD-715 reports and (2) nepotism. After holding a hearing,

---

[1] We do not describe charge 2 in any more detail because the Board ultimately did not use charge 2 as a basis for its decision. Although the Board agreed with the administrative judge that charge 2 was "poorly charged," the Board did not disturb the administrative judge's finding that Ms. Higginbotham "reasonably believed that [Ms. Morris] acted improperly" by disclosing certain information concerning coworkers. J.A. 11.

the administrative judge issued the Initial Decision denying Ms. Morris's request for corrective action. First, the administrative judge found that Ms. Morris failed to prove by preponderant evidence that she had a reasonable belief that her allegations of nepotism were protected disclosures under the Whistleblower Protection Act (WPA). Second, the administrative judge found that while Ms. Morris's statements regarding the MD-715 reports were in fact protected disclosures, the EPA met its burden to show by clear and convincing evidence that it would have removed Ms. Morris absent those disclosures. The administrative judge considered the evidence from all four charges in the Proposed Removal to make her determination.

Ms. Morris petitioned the Board to review the Initial Decision. In its Final Order, the Board denied the petition for review and adopted the Initial Decision as its final decision. Specifically related to the MD-715 report disclosures, the Board found that charges 1 (insubordination) and 3 (misuse of supervisory authority) provided substantial support for Ms. Morris's removal.

Ms. Morris now petitions this court for review. We have jurisdiction under 28 U.S.C. § 1295(a)(9).

## DISCUSSION

The scope of our review is limited by statute. We must affirm the Board's decision unless we find it to be "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). Substantial evidence is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Higgins v. Dep't of Veterans Affs.*, 955 F.3d 1347, 1353 (Fed. Cir. 2020) (internal quotations and citation omitted).

I

We begin by addressing whether substantial evidence supports the Board's determination that the EPA demonstrated by clear and convincing evidence that it would have removed Ms. Morris for insubordination and misuse of supervisory authority notwithstanding her protected disclosures regarding the EPA's failure to file the MD-715 reports. We conclude that substantial evidence supports the Board's determination.

In IRA appeals brought under the WPA, the burden first lies with "the employee to show 'by a preponderance of the evidence that he or she made a protected disclosure under [the WPA] that was a contributing factor to the employee's [personnel action].'" *Miller v. Dep't of Just.*, 842 F.3d 1252, 1257 (Fed. Cir. 2016) (second alteration in original) (quoting *Whitmore v. Dep't of Lab.*, 680 F.3d 1353, 1367 (Fed. Cir. 2012)). Once the employee makes this showing, "the burden of persuasion shifts to the agency to show by clear and convincing evidence that it would have taken 'the same personnel action in the absence of such disclosure.'" *Id.* (quoting *Whitmore*, 680 F.3d at 1367). When evaluating whether the agency has met its burden to defend its personnel action by clear and convincing evidence, we use three nonexclusive factors described in *Carr v. Social Security Administration*:

> [(1) T]he strength of the agency's evidence in support of its personnel action; [(2)] the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and [(3)] any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated.

185 F.3d 1318, 1323 (Fed. Cir. 1999). We do not require the agency to produce evidence with respect to every *Carr* factor, but "[r]ather, [t]he factors are merely appropriate

and pertinent considerations for determining whether the agency carries its burden of proving by clear and convincing evidence that the same action would have been taken absent the whistleblowing." *Miller*, 842 F.3d at 1257 (internal quotations and citation omitted) (second alteration in original).

The Board began its analysis by evaluating *Carr* factor 2: the existence and strength of any motive to retaliate on the part of agency officials who were involved in the removal decision. The Board agreed with the administrative judge that Ms. Higginbotham—the proposing official—had a "substantial motive to retaliate" against Ms. Morris based on Ms. Morris's disclosure that MD-715 reports had not been filed, because Ms. Higginbotham was the person responsible for approving and signing those reports. J.A. 7, 35. The Board found Ms. Higginbotham's motive "reflected most prominently in charge 4 of the proposed removal"—making inappropriate statements in a work product—because the work product Ms. Higginbotham complained of claimed that the MD-715 reports had not been filed. J.A. 7, 35. Neither party challenges the Board's fact finding on *Carr* factor 2.

The Board nonetheless found that "the strength of the agency's evidence [(i.e., *Carr* factor 1)] outweighed the proposing official's substantial motive to retaliate [(i.e., *Carr* factor 2)]." J.A. 9. We conclude that substantial evidence supports that the Board's finding that despite the substantial motive to retaliate, Ms. Higginbotham would have proposed Ms. Morris's removal even in the absence of her protected disclosures. Addressing *Carr* factor 1, the Board reasonably found that "[t]he facts upon which these charges and specifications were based suggest that [Ms. Morris's] relationship with [Ms. Higginbotham] was adversarial and that [Ms. Morris's] attitude toward the workplace had deteriorated to the point where she had become disrespectful, disruptive, and discourteous." J.A. 13. Substantial evidence in the record supports this finding,

including (1) Ms. Morris's statement that Ms. Higginbotham often made up "fabrications . . . for [her] own ends," J.A. 195; (2) Ms. Morris's statements that Ms. Higginbotham was "the problem [in OCR] that the agency ha[d] refused to acknowledge or fix," *id.*; (3) Ms. Morris's accusation that Ms. Higginbotham had "been allowed to ruin so many employees' work lives and professional standing," J.A. 201; (4) Ms. Morris's degrading treatment of a subordinate, including accusing the subordinate of "disloyalty," J.A. 46; and (5) Ms. Morris's disruption of a conference call to such a degree that attendees characterized her behavior as "negative," "inappropriate," and "very disturbing," J.A. 42–43. After weighing the evidence for each *Carr* factor, the Board reasonably found that the EPA met its burden, reasoning that while Ms. Higginbotham "had a substantial motive to retaliate against [Ms. Morris], it appears that her primary motive for disciplining [Ms. Morris] was her concern over [Ms. Morris's] failure to follow directions and [Ms. Morris's] disrespectful and disruptive conduct." J.A. 13. The Board was entitled to weigh this evidence as it did, particularly based on the administrative judge's credibility findings. *See Jones v. Dep't of Health & Hum. Servs.*, 834 F.3d 1361, 1369 (Fed. Cir. 2016) ("Under the substantial evidence standard of review, we do not reweigh evidence on appeal." (cleaned up) (citation omitted)); *King v. Dep't of Health & Hum. Servs.*, 133 F.3d 1450, 1453 (Fed. Cir. 1998) ("[A]n evaluation of witness credibility is within the discretion of the Board and . . . in general, such evaluations are 'virtually unreviewable' on appeal." (citation omitted)). Accordingly, we affirm the Board's finding that the EPA proved by clear and convincing evidence that it would have terminated Ms. Morris regardless of her whistleblowing activity.

II

We now turn to whether substantial evidence supports the Board's determination that Ms. Morris failed to prove by preponderant evidence that her allegations of nepotism

were protected disclosures. Specifically, we ask whether substantial evidence supports the Board's fact finding as to whether the whistleblower had "a reasonable belief that . . . a violation of law" occurred. *Frederick v. Dep't of Just.*, 73 F.3d 349, 352 (Fed. Cir. 1996) (emphasis omitted). "Interpretation of a statute is a question of law that we review *de novo*." *Lachance v. White*, 174 F.3d 1378, 1380 (Fed. Cir. 1999) (quoting *Frederick*, 73 F.3d at 351–52).

For a disclosure to be protected under the WPA, the disclosure must involve either "any violation of any law, rule, or regulation," or "gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety." 5 U.S.C. § 2302(b)(8)(A). "The [B]oard must look for evidence that it was *reasonable* to believe that the disclosures revealed misbehavior . . . ." *Lachance*, 174 F.3d at 1380 (emphasis added). To determine if Ms. Morris had a reasonable belief that her nepotism disclosure revealed misconduct, we ask: "could a disinterested observer with knowledge of the essential facts known to and readily ascertainable by [Ms. Morris] reasonably conclude that the actions of the government evidence" nepotism? *Id.* at 1381.

Substantial evidence supports the Board's determination that Ms. Morris's allegations of nepotism were not protected disclosures. Ms. Morris's allegations of nepotism before the administrative judge included that (1) "sons, daughters and other relatives are being hired into positions at EPA and the 'buddy system' prevails"; (2) "relatives and good friends of others are still being brought into the agency"; (3) Ms. Higginbotham's daughter worked in the EPA's summer intern program "for years" and "'the administrator's child and the personnel director's child' were also hired for unidentified positions"; and (4) a contractor hired by the EPA to work on the MD-715 reports told her that there was favoritism and nepotism at the EPA. J.A. 30–31 (citations omitted). Even accepting Ms. Morris's allegations as true, the Board did not err in finding that they do

not provide a reasonable belief of nepotism, because the nepotism statute requires action beyond the agency hiring the relative of a current employee. For nepotism to occur, an agency employee must:

> appoint, employ, promote, advance, or advocate for appointment, employment, promotion, or advancement, in or to a civilian position any individual who is a relative . . . of such employee if such position is in the agency in which such employee is serving as a public official . . . or over which such employee exercises jurisdiction or control as such an official.

5 U.S.C. § 2302(b)(7).

At the Board hearing, Ms. Morris did not present any evidence of any particular action taken by agency employees. Ms. Morris did not provide any evidence other than her observations that many relatives had been employed and her recollection that an agency contractor told her that nepotism occurred. Given her conclusory and vague evidence of nepotism, we cannot say that the Board erred in finding that Ms. Morris's evidence did not provide a reasonable belief of nepotism, since she provided no evidence that an agency employee "appoint[ed], . . . promote[d], advance[d], or advocate[d]" for a relative's employment at the EPA. *Id.*

### CONCLUSION

We have considered Ms. Morris's remaining arguments and find them unpersuasive. For the foregoing reasons, we affirm the Board's decision.

**AFFIRMED**

### COSTS

No costs.