**Marcia R. KING, Petitioner,**

v.

**DEPARTMENT OF HEALTH AND
HUMAN SERVICES,
Respondent.**

**No. 97–3397.**

United States Court of Appeals,
Federal Circuit.

Jan. 12, 1998.

---

Marcia R. King, Forth Worth, Texas, pro se.

John P. Sholar, Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, DC, for respondent. With him on the brief were Frank W. Hunger, Assistant Attorney General, David M. Cohen, Director, and Joseph A. Kijewski, Assistant Director.

Before MICHEL, SCHALL, and BRYSON, Circuit Judges.

MICHEL, Circuit Judge.

Marcia R. King petitions for review of a final decision of the Merit Systems Protection Board (the "Board"), Docket No. DA–1221–95–0647–B–1. On June 27, 1997, the Board denied King's petition for review of an initial decision issued on November 13, 1996 by an Administrative Judge ("AJ") who dismissed King's Individual Right of Action ("IRA"), filed pursuant to the Whistleblower Protection Act of 1989, Pub.L. No. 101–12, 103 Stat. 16 (1989) (codified at scattered sections of 5 U.S.C. (1994)) (the "WPA"), for lack of jurisdiction.[1] The AJ's decision thus became the final decision of the Board. The AJ held that the progress report at issue here was not a "performance evaluation," and therefore not a personnel action within the meaning of the WPA. Because the AJ's determination that King thus failed to satisfy the WPA's jurisdictional prerequisites was supported by substantial evidence and not contrary to law, we affirm.

## I. BACKGROUND

The facts of this case are set forth with great specificity in the AJ's opinion. Briefly, King is a GS–5 Hearing Clerk employed in the Social Security Administration's Office of Hearing and Appeals (the "Office"). On September 20, 1991, King and four of her co-workers signed a letter to Daniel Skoler, the Office's Associate Commissioner for Hearings and Appeals, in which they alleged that their manager (and King's direct supervisor), Patricia Friar, had engaged in several instances of inhumane treatment of her subordinates. The letter further alleged that Christopher Williams, a Chief Administrative Law Judge in the Office, had taken no action to resolve these problems.

On February 16, 1994, King met with Friar to receive a Progress Review as part of the Office's performance review process. In accordance with Office custom, King signed an agency Form SSA–1301, an "SSA Employee Performance Management System Performance Planning and Review," which included some "Progress Review Comments" made by Friar setting forth the steps that King could still take to improve her job performance before the next performance evaluation. King subsequently filed a complaint with the Office of Special Counsel ("OSC"), asserting that the Progress Review she received constituted unlawful retaliation for her whistleblowing activities—namely, the September 20, 1991 letter. On March 14, 1995, the OSC informed King that its investigation into her case had been terminated. King filed an IRA with the Board's Dallas Regional Office as authorized under 5 U.S.C § 1221(a).

In his initial decision, the AJ found that King had demonstrated adequately that the September 20 letter constituted a protected disclosure and hence a whistleblowing activity according to 5 U.S.C. § 2302(b)(8). The AJ determined, however, that the Progress Review was not a "personnel action" within

---

1. We note that *King v. Social Security Administration,* Appeal No. 97–3353, is also pending before this court. We have decided not to consolidate these appeals but will treat them as companion cases. Therefore, a separate disposition will issue in each appeal.

the meaning of 5 U.S.C. § 2302(a)(2)(A) (listing eight types of personnel actions, including "a performance evaluation"). On that basis, the AJ dismissed the case for lack of jurisdiction.[2] King filed a timely appeal, contending that the AJ improperly weighed the evidence she presented to support her IRA and incorrectly concluded that her February 16, 1994 Progress Report was not a "performance evaluation."

## II. ANALYSIS OF KING'S IRA

■ According to the WPA, a government official may not

take or fail to take, or threaten to take or fail to take, a *personnel action* with respect to any employee ... because of ... any disclosure of information by an employee ... which the employee ... reasonably believes evidences ... gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.

5 U.S.C. § 2302(b)(8)(A)(ii) (emphasis added). To maintain an IRA under the WPA, a petitioner must establish Board jurisdiction by a preponderance of the evidence which demonstrates that: 1) she engaged in a whistleblowing activity by making a disclosure protected under 5 U.S.C. § 2302(b)(8); 2) based on the protected disclosure, the agency took or failed to take, or threatened to take or fail to take, a "personnel action" as defined in 5 U.S.C. § 2302(a); and 3) her administrative remedies, including those available through the OSC, have been exhausted. *See* 5 U.S.C. § 1214(a)(3); 5 C.F.R. § 1201.56(a)(2)(i); *Serrao v. Merit Sys. Protection Bd.*, 95 F.3d 1569, 1574 (Fed.Cir.1996); *Mintzmyer v. Department of the Interior*, 84 F.3d 419, 422 (Fed.Cir.1996). On appeal, a decision by the Board may only be disturbed if it is arbitrary, capricious, an abuse of discretion, unsupported by substantial evidence, or contrary to law. *See* 5 U.S.C. § 7703(c). The Board's statutory interpretations are reviewed *de novo*, for correctness as a matter of law. *See King v. Briggs*, 83 F.3d 1384,

1387 (Fed.Cir.1996); *Marano v. Department of Justice*, 2 F.3d 1137, 1141 (Fed.Cir.1993).

In order to determine whether jurisdiction had been established, the AJ first had to consider the meaning of the statutory term "performance evaluation." For guidance, the AJ relied on the regulations governing agencies' performance appraisal systems. *See* 5 C.F.R. §§ 430.101–.310 (1997). He noted that the regulations define "progress review" as communication with the employee about performance compared to objective standards. *See* 5 C.F.R. § 430.203. The AJ distinguished this process of communication about an employee's progress *during* an appraisal period from a final evaluation and rating of an employee's performance at the *end* of an appraisal period. Thus, based on its ongoing, collaborative, and informal nature, the AJ concluded that a progress report does not constitute a "personnel action" under the WPA.

■ We agree with this distinction between a progress report, which is not a personnel action, and a "performance evaluation," which is. Although there is little or no relevant authority that clearly defines what constitutes a performance evaluation, the regulations and the case law suggest to us that a performance evaluation is formal, judgmental, consequential, and retrospective, while a progress report is informal, collaborative, non-consequential, and somewhat prospective in nature, providing an opportunity for future improvement. Thus, while a performance evaluation judges the quality of past work, a progress report gives an employer the chance to communicate with and guide the future performance of its employees by clarifying how well each employee has been meeting existing goals during a performance period to date. In addition, progress reports are usually more frequent than performance evaluations, as was the case here. This distinction generally comports with existing law interpreting the requirements of the WPA, in which this court has held that

---

2. The AJ also dismissed King's claim that the performance evaluation she received on October 4, 1994 constituted a prohibited personnel action under the statute because King had failed to exhaust her remedies before the OSC with re-

spect to that performance evaluation. The issue of whether the Board had jurisdiction over the October 4 evaluation has not been appealed here, and thus we do not address it.

not every agency action is a "personnel action" under the WPA. *See, e.g., Frederick v. Department of Justice,* 73 F.3d 349, 353–54 (Fed.Cir.1996) (holding that one negative report, out of ten reports made during a training period, did not constitute substantial evidence that "disciplinary or corrective action" would have resulted and therefore was not a "performance evaluation" under the WPA); *Weber v. Department of the Army,* 9 F.3d 97, 101 (Fed.Cir.1993) (holding that the failure to select one employee's engineering proposal over other options submitted was not a personnel action). These decisions require that an action must have practical consequence for the employee, such as denial of a promotion, to constitute a personnel action. This interpretation is supported by the legislative history, which suggests that Congress did not intend the WPA to create an IRA from every interim comment made in the workplace, written or otherwise, about the need for improvement. *Cf.* H.R. Conf. Rep. No. 95–1717, at 129–30 (1978), *reprinted in* 1978 U.S.C.C.A.N. 2860, 2863 ("To be covered under this provision a personnel action must be significant.... This [law] is not intended to interfere with management's authority ... to establish supervisory relationships."). We therefore agree with the AJ's distinction between a performance evaluation as intended by Congress in the WPA and the type of progress report being challenged here.

■ After making this distinction, the AJ concluded based on the testimony of Friar that the Progress Review at issue here, at least as used by this agency, is a progress report, not a "performance evaluation," and therefore not a basis for jurisdiction under the WPA. The AJ first emphasized Friar's testimony that the Progress Review merely advises employees of how they are performing and provides guidance as to the areas in which their work could be improved before their performance is actually evaluated at the end of the performance period. The AJ also noted that, although Friar explained an employee's failure to make improvements in those areas might justify later relying on the Progress Review Comments during preparation of an actual performance evaluation, Friar herself did not ever use her comments as the "groundwork" for the evaluation absent a formal performance improvement period and supporting documentation of a failure to improve during that period.

■ We note that an evaluation of witness credibility is within the discretion of the Board and that, in general, such evaluations are "virtually unreviewable" on appeal. *Clark v. Department of the Army,* 997 F.2d 1466, 1473 (Fed.Cir.1993). We therefore uphold the AJ's analysis of the Progress Review, for it is supported by substantial evidence.[3]

We hold as a matter of statutory interpretation that this Progress Review and progress reports in general are not "performance evaluations" for purposes of the WPA.

### III. OTHER ISSUES

As a separate matter, we find no evidence in the record to support King's claim that the AJ was biased against her, or that his evaluation of the evidence she presented constituted an abuse of discretion. Thus, King's allegations of bias do not support a reversal of the AJ's decision on appeal.

### IV. CONCLUSION

Because the AJ correctly interpreted the jurisdictional requirements of the WPA, and because his conclusion that the progress report at issue here did not meet those requirements because it was not a performance evaluation was supported by substantial evidence, dismissal of King's IRA for lack of jurisdiction was legally correct. Accordingly,

3. King also alleged that her signature on the Progress Review had been forged, and she raises this issue again on appeal. The AJ briefly concluded that forgery is not a prohibited personnel action under the WPA. We are not convinced that this is always true; for example, a forged "performance evaluation" may well be a violation of the WPA if the forgery was made in retaliation for an employee's protected disclosure. We decline to reach the issue here, however, because the Progress Review challenged by King does not constitute a personnel action under the WPA, forged or otherwise. Similarly, neither the AJ nor this court need evaluate whether the Progress Review could have been caused by the protected disclosure three years earlier, given that there were intervening performance evaluations not challenged here.

1454

the Board's decision to dismiss the case for lack of jurisdiction is

*AFFIRMED.*