# UNITED STATES OF AMERICA
## MERIT SYSTEMS PROTECTION BOARD

KAREN L. INGRAM-WILLIAMS,
        Appellant,

      v.

DEPARTMENT OF VETERANS
   AFFAIRS,
        Agency.

DOCKET NUMBER
SF-1221-16-0352-W-1

DATE:  December 12, 2023

# THIS FINAL ORDER IS NONPRECEDENTIAL[1]

<u>Heather White</u>, Esquire, Washington, D.C., for the appellant.

<u>Maya Soloway</u>, Esquire, Los Angeles, California, for the agency.

## BEFORE

Cathy A. Harris, Vice Chairman
Raymond A. Limon, Member

## FINAL ORDER

¶1      The appellant has filed a petition for review of the initial decision, which denied her request for corrective action in her individual right of action (IRA) appeal.  Generally, we grant petitions such as this one only in the following circumstances:  the initial decision contains erroneous findings of material fact; the initial decision is based on an erroneous interpretation of statute or regulation

---

[1] A nonprecedential order is one that the Board has determined does not add significantly to the body of MSPB case law.  Parties may cite nonprecedential orders, but such orders have no precedential value; the Board and administrative judges are not required to follow or distinguish them in any future decisions.  In contrast, a precedential decision issued as an Opinion and Order has been identified by the Board as significantly contributing to the Board's case law.  *See* 5 C.F.R. § 1201.117(c).

or the erroneous application of the law to the facts of the case; the administrative judge's rulings during either the course of the appeal or the initial decision were not consistent with required procedures or involved an abuse of discretion, and the resulting error affected the outcome of the case; or new and material evidence or legal argument is available that, despite the petitioner's due diligence, was not available when the record closed. Title 5 of the Code of Federal Regulations, section 1201.115 (5 C.F.R. § 1201.115). After fully considering the filings in this appeal, we conclude that the petitioner has not established any basis under section 1201.115 for granting the petition for review. Therefore, we DENY the petition for review and AFFIRM the initial decision, except as MODIFIED. We MODIFY the initial decision to clarify that a performance improvement plan (PIP) may constitute a personnel action under the Whistleblower Protection Act (WPA) and that an agency action need not be "formal discipline" to constitute a covered personnel action. We further MODIFY the initial decision to find that the appellant's supervisor had a strong motive to retaliate against her and that her second-level supervisor and the deciding official had some motive to retaliate against her.

## BACKGROUND

¶2      Prior to her resignation, effective March 27, 2014, the appellant was employed as a Nurse Supervisor with the agency's Long Beach Healthcare Service. Initial Appeal File (IAF), Tab 5 at 56. In a December 2015 complaint to the Office of Special Counsel (OSC) and in subsequent correspondence with OSC, the appellant alleged that, in retaliation for her 2012 disclosures regarding improper hiring and management practices by her first-level supervisor and inadequate patient care by a physician, her supervisor excluded her from the hiring process, placed her on a PIP without her knowledge, gave her an unsatisfactory midyear performance review, detailed her, demoted her, and proposed her removal, which the deciding official imposed. IAF, Tab 1 at 20-36.

In letters dated March 3, 2016, OSC notified the appellant that it had terminated its inquiry into her allegations and informed her of her right to seek corrective action from the Board. *Id.* at 34-36.

¶3 The appellant timely filed the instant IRA appeal, alleging that, in retaliation for her protected disclosures, the agency took the above actions against her, as reported to OSC, and that these actions forced her to resign.[2] IAF, Tab 1 at 1-7, Tab 8 at 1-3, Tab 9 at 4-6. The appellant declined her option for a hearing. IAF, Tab 1 at 2. After notifying the parties of the applicable law and their respective burdens of proof, IAF, Tab 8, the administrative judge issued an initial decision finding Board jurisdiction over the appeal but denying the appellant's request for corrective action, IAF, Tab 15, Initial Decision (ID).

¶4 The appellant has filed a petition for review of the initial decision, the agency has responded in opposition, and the appellant has submitted a reply to the agency's response. Petition for Review (PFR) File, Tabs 4, 6-7.

## DISCUSSION OF ARGUMENTS ON REVIEW

¶5 The Board has jurisdiction over an IRA appeal based on whistleblower reprisal under the WPA, as amended by the Whistleblower Protection Enhancement Act of 2012 (WPEA), if the appellant has exhausted her administrative remedies before OSC and makes nonfrivolous allegations of the following: (1) she engaged in whistleblowing activity by making a protected disclosure under 5 U.S.C. § 2302(b)(8), or engaged in protected activity described under 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D); and (2) the disclosure or protected activity was a contributing factor in the agency's decision to take, fail to take, or threaten to take a personnel action as defined by 5 U.S.C. § 2302(a).[3]

---

[2] The deciding official imposed the proposed removal in a decision letter dated March 13, 2014, with an effective date of March 28, 2014, and the appellant resigned effective March 27, 2014. IAF, Tab 5 at 56-57, Tab 7 at 5.

[3] Effective December 27, 2012, the WPEA expanded the grounds on which an appellant may file an IRA appeal with the Board. WPEA, Pub. L. No. 112-199, §§ 101(b)(1)(A), 202, 126 Stat. 1465, 1476; *see Hooker v. Department of Veterans Affairs*, 120 M.S.P.R.

*Yunus v. Department of Veterans Affairs*, 242 F.3d 1367, 1371 (Fed. Cir. 2001); *Salerno v. Department of the Interior*, 123 M.S.P.R. 230, ¶ 5 (2016); *see* 5 U.S.C. § 2302(b)(8). After establishing the Board's jurisdiction in an IRA appeal, the appellant then must establish a prima facie case of whistleblower retaliation by proving by preponderant evidence that she made a protected disclosure or engaged in protected activity that was a contributing factor in a personnel action taken against her.[4] *Salerno*, 123 M.S.P.R. 230, ¶ 5; *see* 5 U.S.C. § 1221(e)(1). If the appellant makes out a prima facie case, the agency is given an opportunity to prove, by clear and convincing evidence, that it would have taken the same personnel action in the absence of the protected disclosure or activity. 5 U.S.C. § 1221(e)(1)-(2); *Salerno*, 123 M.S.P.R. 230, ¶ 5.

¶6      In the initial decision, the administrative judge found that the appellant established jurisdiction over her IRA appeal by exhausting her administrative remedies and by making the requisite nonfrivolous allegations. ID at 1, 12. She further found that the appellant made one protected disclosure that was a

_____

629, ¶ 9 (2014). Prior to the WPEA's enactment, an appellant could file an IRA appeal with the Board based on allegations of whistleblower reprisal under 5 U.S.C. § 2302(b)(8) only. *See Wooten v. Department of Health and Human Services*, 54 M.S.P.R. 143, 146 (1992), *superseded by statute as stated in Carney v. Department of Veterans Affairs*, 121 M.S.P.R. 446, ¶ 5 (2014). Following the WPEA's enactment, an appellant also may file an IRA appeal with the Board concerning alleged reprisal for protected activity as defined in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), and (D). 5 U.S.C. § 1221(a); *Hooker*, 120 M.S.P.R. 629, ¶ 9. The WPEA does not apply retroactively, and the date of the purported retaliation, not the disclosures, is dispositive in determining whether pre-WPEA or post-WPEA standards apply. *See Hooker*, 120 M.S.P.R. 629, ¶¶ 13, 15. In the instant case, several of the alleged retaliatory actions occurred before, and several occurred after, the effective date of the WPEA. Because the appellant's allegations of whistleblower reprisal all arise under section 2302(b)(8), however, the WPEA did not provide her any additional appeal rights. Moreover, we find that the WPEA's other amendments to the WPA do not affect the outcome in this appeal. *See* WPEA §§ 101(a)(1)-104, 114. Therefore, in considering the appellant's claims, we need not differentiate between the alleged retaliation occurring prior to and after the WPEA's effective date. We have also reviewed the other relevant legislation enacted since the filing of this appeal and find that it does not impact the outcome.

[4] Preponderance of the evidence is the degree of relevant evidence that a reasonable person, considering the record as a whole, would accept as sufficient to find that a contested fact is more likely to be true than untrue. 5 C.F.R. § 1201.4(q).

contributing factor in her November 2012 detail, the proposed removal, and the removal action. ID at 12-16. The administrative judge determined, however, that several of the appellant's disclosures were not protected and that the memorandum of counseling, the counseling program/PIP,[5] and the midyear review were not covered personnel actions. *Id.* She also found that, although an involuntary resignation may constitute a constructive removal, which is a personnel action under the WPA, the appellant failed to establish that her resignation was involuntary. ID at 16-17. Although the administrative judge found that the appellant established her prima facie case of whistleblower reprisal, she determined that the agency showed by clear and convincing evidence that it would have taken the same personnel actions in the absence of the disclosure and thus denied corrective action. ID at 18-20.

¶7      On review, the appellant argues that the administrative judge erred in finding that she made only one protected disclosure; that her resignation was voluntary; and that the agency met its burden of showing by clear and convincing evidence it would have taken the same personnel actions absent any protected disclosure. PFR File, Tab 4 at 13-20. In response to the agency's opposition to her petition for review, the appellant reiterates these arguments and further argues that the administrative judge erred in finding that the counseling program/PIP and

---

[5] On June 1, 2012, the appellant's first-level supervisor presented her with a memorandum of counseling showing issues with her performance and placing her on a "Counseling Plan" to address deficiencies in her performance. IAF, Tab 13 at 12-15. According to the agency's Acting Chief of Human Resources (HR Chief), there was some confusion about whether the appellant should have been placed on a counseling program (which is the appropriate improvement program for a Title 38 nonsupervisory employee) or on a PIP (which is the appropriate improvement program for a supervisory employee in an Executive Career Field position). IAF, Tab 11 at 60-61. Although the HR Chief stated that he informed the appellant's supervisor that the appellant should be on a PIP, instead of a counseling program, he did not know if she informed the appellant of the need to change the counseling program to a PIP. *Id.* While there is no indication in the record that the agency took action to convert the counseling program to a PIP, the administrative judge and the parties referred to the June 1, 2012 "Counseling Plan" as a "counseling program/PIP."

the midyear appraisal were not covered personnel actions under the WPA. PFR File, Tab 7.

<u>The administrative judge correctly found that the appellant made only one protected disclosure.</u>

¶8      A protected disclosure is a disclosure that an appellant reasonably believes evidences a violation of any law, rule, or regulation, gross mismanagement, a gross waste of funds, an abuse of authority, or a substantial and specific danger to public health or safety.  5 U.S.C. § 2302(b)(8)(A); *Chavez v. Department of Veterans Affairs,* 120 M.S.P.R. 285, ¶ 18 (2013).  A reasonable belief exists if a disinterested observer with knowledge of the essential facts known to, or readily ascertainable by, the appellant could reasonably conclude that the agency's actions evince one of the types of wrongdoing listed in section 2302(b)(8)(A). *Lachance v. White*, 174 F.3d 1378, 1381 (Fed. Cir. 1999);[6] *Chavez,* 120 M.S.P.R. 285, ¶ 18.  The appellant need not prove that the matter disclosed actually established one of the listed types of wrongdoing; rather, she must show that the matter disclosed was one that a reasonable person in her position would have believed evidenced any of the situations specified in 5 U.S.C. § 2302(b)(8)(A). *Chavez,* 120 M.S.P.R. 285, ¶ 18.

¶9      In her correspondence with OSC, the appellant alleged that, in January or February 2012, she disclosed to her second-level supervisor that her supervisor was directly supervising her (supervisor's) girlfriend, had hired her girlfriend's daughter and friends over more qualified candidates, and had excluded the appellant from the hiring and interview process.  IAF, Tab 1 at 20-21, 29.  She also notified OSC that she disclosed to a supervising physician, her first- and

---

[6] Historically, the Board has been bound by the precedent of the U.S. Court of Appeals for the Federal Circuit on these types of whistleblower issues.  However, pursuant to the All Circuit Review Act (Pub. L. No. 115-195, 132 Stat. 1510 (2017)), appellants may file petitions for judicial review of Board decisions in whistleblower reprisal cases with any circuit court of appeals of competent jurisdiction.  *See* 5 U.S.C. § 7703(b)(1)(B). Therefore, we must consider these issues with the view that the appellant may seek review of this decision before any appropriate court of appeal.

second-level supervisors, and the Office of the Inspector General that another physician had poor clinical practices that placed patients at risk. *Id.* at 21, 23.

¶10　　　In the initial decision, the administrative judge found that the appellant's first disclosure, that her supervisor was directly supervising her girlfriend, was not protected because, in actuality, the supervisor did not directly supervise her girlfriend. ID at 12. The administrative judge concluded that the chain of command was known to, or was reasonably ascertainable by, the appellant and that a disinterested observer could not reasonably conclude that this evinced one of the categories of wrongdoing specified in section 2302(b)(8)(A). *Id*. The administrative judge also found probative the fact that the appellant acknowledged in a September 2013 affidavit that she knew that her supervisor did not directly supervise her girlfriend but believed instead that her supervisor "directly affects" the girlfriend. *Id.* The administrative judge concluded that, even if the appellant believed that her supervisor "affected" her girlfriend's employment, such a vague allegation was insufficient for a disinterested observer to conclude that there was wrongdoing. ID at 12-13.

¶11　　　On review, the appellant argues that the administrative judge erred in relying on a September 2013 affidavit as evidence that the appellant knew that her supervisor did not directly supervise her girlfriend. PFR File, Tab 4 at 13-14, Tab 7 at 4-5. We agree that the appellant's September 2013 affidavit is not dispositive on the question of what the appellant knew when she made the disclosures in 2012. However, the administrative judge did not rely solely on the appellant's statement in the affidavit in finding that this first disclosure was not protected. Rather, as noted above, she also found that the fact that her supervisor did not directly supervise her girlfriend was information readily ascertainable by the appellant. ID at 12. The appellant has not challenged this finding on review, and we discern no basis to disturb it. Insofar as the appellant believed that the supervisor was able to "affect" her girlfriend's employment, we agree with the administrative judge's finding that this allegation of wrongdoing is too vague to

constitute a protected disclosure because the appellant has not alleged with specificity that her supervisor gave her girlfriend preferential treatment. ID at 12-13; *see Ayers v. Department of the Army*, 123 M.S.P.R. 11, ¶¶ 23-24 (2015); *see also Rzucidlo v. Department of the Army*, 101 M.S.P.R. 616, ¶ 13 (2006) (explaining that, to be protected, disclosures must be specific and detailed, not vague allegations of wrongdoing regarding broad or imprecise matters).

¶12    The appellant also appears to argue that the administrative judge erred in finding that this disclosure was not protected because she alleged that her supervisor granted her girlfriend preferential treatment by, for example, hiring her girlfriend's daughter and her friends over more qualified applicants. PFR File, Tab 4 at 14. The administrative judge found, however, that the disclosure regarding improper hiring practices was protected. ID at 13. Specifically, she found that a disinterested observer, with knowledge of the essential facts known to and readily ascertainable by the appellant, could reasonably conclude that hiring less qualified candidates who are friends or family members of a friend is, at a minimum, an abuse of authority and potentially a violation of a law, rule, or regulation. *Id*. We discern no basis to disturb this determination.[7]

¶13    In light of the foregoing, we agree with the administrative judge's finding that the appellant established by preponderant evidence that she made one protected disclosure evidencing an abuse of discretion or a violation of law, rule, or regulation when, in January or February 2012, she informed her second-level supervisor that her first-level supervisor hired less-qualified candidates who were friends or family of her girlfriend over more qualified candidates. ID at 15.

---

[7] The administrative judge concluded that the appellant's disclosures that she was excluded from the interview process and that a physician had unspecified poor clinical practices were not protected. ID at 14-15. The appellant has not challenged these findings on review, PFR File, Tabs 4, 7, and we find no basis to disturb them. *See Crosby v. U.S. Postal Service*, 74 M.S.P.R. 98, 105-06 (1997) (finding no reason to disturb the administrative judge's findings when she considered the evidence as a whole, drew appropriate inferences, and made reasoned conclusions).

<u>The administrative judge correctly determined that the counseling program/PIP and midyear review are not personnel actions under the WPA, but we MODIFY the initial decision to clarify and supplement the analysis.</u>

¶14     As noted above, the WPA, as amended, prohibits an agency from taking, failing to take, or threatening to take a personnel action against an employee because of any protected disclosure.  5 U.S.C. § 2302(b)(8).  A "personnel action" is defined in this context as, among other things, a disciplinary or corrective action, a detail or reassignment, or a performance evaluation under 5 U.S.C. chapter 43 or under Title 38.  5 U.S.C. § 2302(a)(2)(A).

¶15     In the instant case, the administrative judge found that the appellant's detail, proposed removal, and removal constituted personnel actions within the meaning of the WPA.[8]   ID at 15-16.  She further found, however, that the memorandum of counseling, counseling program, PIP, and midyear review were not "formal discipline" and, therefore, did not constitute personnel actions under the WPA. ID at 16.  On review, the appellant argues that the administrative judge erred in finding that the counseling program/PIP and midyear review were not covered personnel actions.  PFR File, Tab 7 at 6-7.

¶16     As the appellant correctly points out on review, the Board has held that a PIP and equivalent opportunity-to-improve programs involve a threatened personnel action, such as a reduction in grade or removal, and thus are personnel actions under the WPA.  *Harris v. Department of Transp*ortation, 96 M.S.P.R. 487, ¶ 7 (2004); *Gonzales v. Department of Housing and Urban Development*, 64 M.S.P.R. 314, 319 (1994).  Therefore, we modify the initial decision to clarify that a PIP may constitute a personnel action under 5 U.S.C. § 2302(a)(2)(A).  ID at 16.  Further, we modify the initial decision to clarify that an agency action need not constitute "formal discipline" to be deemed a personnel action under the WPA.  *See* 5 U.S.C. § 2302(a)(2)(A).  Nonetheless, as discussed below, we find

---

[8] The administrative judge also found that the appellant established that her protected disclosures were a contributing factor in these personnel actions by virtue of the knowledge/timing test.  ID at 15-16.  The parties do not challenge this finding on review, and we discern no basis to disturb it.  *See Crosby,* 74 M.S.P.R. at 105-06.

that the appellant was not placed on a covered PIP or an equivalent program and agree with the administrative judge's finding that, under the circumstances present here, the counseling program/PIP and midyear review are not personnel actions under the WPA.

¶17    In *King v. Department of Health and Human Services*, 133 F.3d 1450, 1452-53 (Fed. Cir. 1998), the U.S. Court of Appeals for the Federal Circuit held that, unlike a performance evaluation, a progress report is not a personnel action under the WPA. *See* 5 U.S.C. § 2302(a)(2)(A)(viii). The court explained that not every agency action is a personnel action under the WPA and that, to constitute a personnel action, an action must have practical consequences for an employee. *King*, 133 F.3d at 1453. In distinguishing a progress report from a performance evaluation, the court found that "a performance evaluation is formal, judgmental, consequential, and retrospective, while a progress report is informal, collaborative, non-consequential, and somewhat prospective in nature, providing an opportunity for future improvement." *Id.* at 1452. Thus, the court explained, "while a performance evaluation judges the quality of past work, a progress report gives an employer the chance to communicate with and guide the future performance of its employees by clarifying how well each employee has been meeting existing goals during a performance period to date." *Id.*

¶18    Here, we find that the appellant's midyear review is akin to the progress review addressed in *King*. During her midyear review meeting, the appellant's supervisor provided her a progress review indicating that her performance needed improvement to be fully successful or better in fiscal year 2012 and also provided a memorandum of counseling, which identified performance issues and set forth her expectations. IAF, Tab 11 at 111, Tab 13 at 12-15. The appellant did not receive an official rating during her midyear review, and the documents given to her did not reference any disciplinary or corrective action. *Id.* For these reasons, the midyear review, like the progress report in *King*, was an informal and prospective attempt to improve the appellant's future performance, did not have

practical consequences for her, and was not a personnel action. *See King,* 133 F.3d at 1452-53.

¶19      As noted above, the Board has found that a PIP and equivalent opportunity-to-improve programs are personnel actions under the WPA because they constitute a threat of a personnel action. *Gonzales,* 64 M.S.P.R. at 319; *see Harris,* 96 M.S.P.R. 487, ¶ 7. However, Congress did not intend for the WPA to create an IRA appeal for every interim comment made in the workplace, written or otherwise, about the need for improvement, and not all general statements setting forth performance expectations and the consequences of failing to meet those expectations or counseling measures directed at particular employees constitute threats to take a personnel action. *Koch v. Securities and Exchange Commission,* 48 F. App'x 778, 787 (Fed. Cir. 2002);[9] *see King,* 133 F.3d at 1453. The line between a counseling measure and a threat is not a bright one, and the distinction between the two is very fact dependent. *Koch,* 48 F. App'x at 787.

¶20      Here, as noted above, there is an outstanding question about whether the appellant should have been placed on a counseling program or a PIP and about whether the agency converted the counseling program to a PIP. IAF, Tab 11 at 61. Nonetheless, the nature of the action determines the Board's jurisdiction, not the agency's characterization of it. *Czarkowski v. Department of the Navy,* 87 M.S.P.R. 107, ¶ 20 (2000). Therefore, even if the improvement program was not a "PIP," it still may constitute a personnel action under the WPA. *Id.*

¶21      Regulations promulgated by the Office of Personnel Management provide that a tenured Federal employee is entitled to a reasonable opportunity to demonstrate acceptable performance pursuant to 5 C.F.R. § 432.104 before an agency may propose her removal or a reduction in grade based on unacceptable performance. 5 C.F.R. § 432.105(a). Section 432.104 requires, among other things, that the agency notify the employee of the critical elements for which her

---

[9] The Board may rely on an unpublished Federal Circuit decision when, as here, it finds the court's reasoning persuasive. *Mauldin v. U.S. Postal Service,* 115 M.S.P.R. 513, ¶ 12 (2011).

performance is unacceptable, identify the standards that must be attained to demonstrate acceptable performance, and inform her that, unless her performance in the critical element improves and is sustained at an acceptable level, she may be reduced in grade or removed. 5 C.F.R. § 432.104. Citing this section, the Board has held that a PIP, by definition, involves a threatened personnel action—namely a reduction in grade or a removal—and, therefore, is a covered personnel action. *Gonzales*, 64 M.S.P.R. at 319.

¶22    In the instant case, the appellant's supervisor gave her a memorandum of counseling titled "Counseling Program [ ] May 2012," which contained a list of "issues" with her performance, such as competencies that had not been updated or information that had not been secured on specific dates. IAF, Tab 13 at 12-15. Each issue was accompanied by a "Qualification Standard," such as, for example, "[i]ntegrity," "[q]uality of [c]are," and "[p]atient safety." *Id.* Some of the issues were accompanied by an "Expectation," such as "[c]onversations are professional" and "[c]onfidential information is secured." *Id.* At the end of the memorandum, the appellant and her supervisor signed beneath the following statement: "We have reviewed each issue and the expectation is that you will communicate to me how you will rectify each deficiency. This will be incorporated into the Counseling Plan that I am placing you on and I will continue to be available to assist as it is imperative that you correct the issues identified." *Id.* at 15. According to the appellant's supervisor, she and the appellant agreed to meet weekly; however, because the supervisor refused to let the appellant record the meetings or bring a witness from human resources, the appellant did not attend any meetings after June 8, 2012. IAF, Tab 11 at 51.

¶23    Unlike a reasonable opportunity to demonstrate acceptable performance pursuant to 5 C.F.R. § 432.104, the counseling program at issue here did not inform the appellant that she was failing in a critical element, identify standards that must be attained, or threaten her with a reduction in grade or removal should she fail to achieve and maintain acceptable performance. IAF, Tab 13 at 12-15.

Likewise, although the appellant's supervisor advised her that her performance needed to improve to be considered fully successful or better for fiscal year 2012 and informed her of specific areas that needed improvement, she did not threaten any disciplinary action. *Id.* at 15; IAF, Tab 11 at 50-51, 111. Rather, as in other cases wherein the Board has found no threatened personnel action, the agency here merely counseled the appellant regarding performance deficiencies and advised her of the need for improvement. *See Reeves v. Department of the Army*, 101 M.S.P.R. 337, ¶ 11 n.* (2005) (finding that an appellant failed to raise a nonfrivolous allegation that a memorandum of counseling was a personnel action when the memorandum informed him of performance deficiencies and required corrective actions, but did not threaten to take disciplinary action), *disagreed with on other grounds in Delgado v. Merit Systems Protection Board*, 880 F.3d 913 (7th Cir. 2018); *Special Counsel v. Spears*, 75 M.S.P.R. 639, 669 (1997) (finding that a "mid point" counseling memorandum informing an employee that she was failing two of her critical elements was part of a process designed to assist her to bring her performance to an acceptable level, rather than a threatened personnel action). Therefore, we find that the counseling program and related documents here do not constitute the threat of a personnel action under the WPA.

The administrative judge correctly determined that the appellant's resignation was voluntary and did not constitute a personnel action under the WPA.

¶24    Although a decision to resign or retire is presumed to be voluntary and outside the Board's jurisdiction, *Putnam v. Department of Homeland Security*, 121 M.S.P.R. 532, ¶ 21 (2014), an involuntary resignation or retirement may constitute an appealable personnel action in an IRA appeal, *Colbert v. Department of Veterans Affairs*, 121 M.S.P.R. 677, ¶ 12 (2014). An appellant may overcome the presumption of voluntariness by showing that her resignation was the product of misinformation or deception by the agency, or of coercive acts by the agency, such as intolerable working conditions or the unjustified threat of an adverse action. *SanSoucie v. Department of Agriculture*, 116 M.S.P.R. 149,

¶ 14 (2011). To establish involuntariness on the basis of coercion, an appellant must show that the agency effectively imposed the terms of her resignation, that she had no realistic alternative but to resign, and that her resignation was the result of improper acts by the agency. *Staats v. U.S. Postal Service*, 99 F.3d 1120, 1124 (Fed. Cir. 1996).

¶25 Here, the administrative judge found that the appellant's general allegations that her supervisor subjected her to a hostile work environment were insufficient to establish that the agency coerced her resignation or that the agency knew that the reasons for its action could not be substantiated. ID at 17. On review, the appellant challenges these findings, arguing that she was forced to resign after enduring "several years of retaliatory and baseless performance-based personnel actions" and a work environment that was so "intolerable" that she could not attend meetings with her supervisor "for fear of retaliation." PFR File, Tab 4 at 15. We find, however, that these vague and unsupported contentions on review provide no basis to disturb the administrative judge's well-reasoned finding. *See Crosby*, 74 M.S.P.R. at 105-06. In any event, we have reviewed the record and agree with the administrative judge's finding that, although the appellant expressed feelings of stress and believed that she was being treated unfairly, she failed to show that she was subjected to intolerable working conditions that would have compelled a reasonable person in her position to resign. ID at 17; *see Miller v. Department of Defense*, 85 M.S.P.R. 310, ¶ 32 (2000) (holding that an employee is not guaranteed a stress-free working environment and that dissatisfaction with work assignments, a feeling of being unfairly criticized, or difficult or unpleasant working conditions generally are not so intolerable as to compel a reasonable person to resign).

¶26 The administrative judge also found that the appellant did not identify any misinformation or deception on the agency's part that would establish that her resignation was involuntary. ID at 17. On review, the appellant challenges this finding, arguing that her supervisor's actions "demonstrated an element of

deception in failing to notify Appellant of any performance deficiencies." PFR File, Tab 4 at 15. Even if this assertion were true, it would provide no basis to find that the appellant's resignation was involuntary based on deception. A resignation will be considered involuntary if an employee materially relies on an agency's misinformation or deception to her detriment. *Morrison v. Department of the Navy*, 122 M.S.P.R. 205, ¶ 7 (2015). Here, however, the appellant has not alleged, and the record does not reflect, that she relied on any misinformation from the agency or deceptive act on the part of the agency in deciding to submit her resignation. Therefore, we agree with the administrative judge that the appellant has not shown that her resignation was involuntary based on deception or misinformation.

¶27 The appellant further argues on review that the administrative judge "erred in finding that Appellant's removal was not involuntary because '[she] was offered as settlement a Last Chance Agreement in lieu of removal, which she rejected." ID at 17; PFR File, Tab 7 at 6. The appellant, however, misapprehends the administrative judge's finding. In the initial decision, the administrative judge noted that the appellant was offered a last chance settlement agreement in lieu of removal but found that the appellant's choice between unpleasant alternatives did not make her decision to resign involuntary. ID at 17. We agree.

¶28 The doctrine of coerced involuntariness is "a narrow one" and does not apply if the employee resigns or retires because she "does not want to accept [measures] that the agency is authorized to adopt, even if those measures make continuation in the job so unpleasant . . . that [s]he feels that [s]he has no realistic option but to leave." *Staats*, 99 F.3d at 1124. "[T]he fact than an employee is faced with an unpleasant situation or that [her] choice is limited to two unattractive options does not make [her] decision any less voluntary." *Id.* Here, it appears that the appellant was faced with one of several unpleasant alternatives —namely, being removed from her position, accepting or negotiating the agency's proffered last chance settlement agreement, or resigning—and she chose to resign.

As the administrative judge correctly determined, the appellant's choice between these unpleasant alternatives did not render her ultimate choice to resign involuntary. *Id.*; *Lawson v. U.S. Postal Service*, 68 M.S.P.R. 345, 350 (1995) (finding that the fact that the appellant's choice was limited to accepting an assignment, facing an adverse action for refusing the assignment, or applying for retirement did not render his ultimate decision to retire involuntary).

¶29 Finally, the administrative judge found that the appellant failed to show that her resignation was involuntary on the basis of the unjustified threat of removal. ID at 17. On review, the appellant appears to challenge this finding, arguing that the agency subjected her to "baseless performance-based personnel actions." PFR File, Tab 4 at 15. When an employee is faced with the choice between resigning or being subjected to an adverse action, the resulting resignation cannot be considered involuntary unless she shows that the agency lacked reasonable grounds for taking or threatening to take the adverse action. *See Terban v. Department of Energy*, 216 F.3d 1021, 1026 (Fed. Cir. 2000). Here, the administrative judge found that the appellant's mere disagreement with the agency's reasons for its actions failed to show that the agency lacked reasonable grounds for taking an action. ID at 17. The appellant's conclusory assertion on review that the performance-based actions were "baseless" provides no basis to disturb this finding. *See Crosby*, 74 M.S.P.R. at 105-06.

The administrative judge correctly found that the agency proved by clear and convincing evidence that it would have detailed the appellant and sustained her proposed removal in the absence of her protected disclosures, but we MODIFY the initial decision to clarify and supplement the analysis.

¶30 When, as here, an appellant shows by preponderant evidence that she made a protected disclosure and that the disclosure was a contributing factor in the agency's decision to take a personnel action against her, the Board will order corrective action unless the agency shows by clear and convincing evidence that it

would have taken the personnel action in the absence of the whistleblowing.[10] 5 U.S.C. § 1221(e)(2); *Chavez*, 120 M.S.P.R. 285, ¶ 28. In determining whether an agency has shown by clear and convincing evidence that it would have taken the personnel action absent the protected activity, the Board will consider all of the relevant factors, including the following ("Carr factors"): (1) The strength of the agency's evidence in support of its action; (2) the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and (3) any evidence that the agency takes similar actions against employees who did not engage in such protected activity, but who are otherwise similarly situated. *Soto v. Department of Veterans Affairs*, 2022 MSPB 6, ¶ 11; *see also Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999). The Board does not view these factors as discrete elements, each of which the agency must prove by clear and convincing evidence, but rather weighs these factors together to determine whether the evidence is clear and convincing as a whole. *Alarid v. Department of the Army*, 122 M.S.P.R. 600, ¶ 14 (2015). The Board must consider all the evidence, including evidence that detracts from the conclusion that the agency met its burden. *Whitmore v. Department of Labor*, 680 F.3d 1353, 1368 (Fed. Cir. 2012); *Alarid*, 122 M.S.P.R. 600, ¶ 14.

¶31      As noted above, the first covered personnel action at issue in this appeal is the appellant's detail. On November 14, 2012, the appellant's supervisor temporarily assigned her to a nonsupervisory position in the Nursing Education Service "to complete special projects, pending review of [her] performance and how [she] discharged [her] duties." IAF, Tab 7 at 19. The second personnel action at issue in this appeal is the removal action. On January 13, 2014, the appellant's supervisor proposed her removal based on the following charges: (A) Failure to Perform Supervisory Duties (supported by 12 specifications); (B) Providing Inaccurate Information (supported by three specifications);

---

[10] Clear and convincing evidence is that measure or degree of proof that produces in the mind of the trier of fact a firm belief as to the allegations sought to be established. 5 C.F.R. § 1209.4(e).

(C) Failure to Follow Instructions (supported by five specifications); (D) Careless Workmanship (supported by four specifications); and (E) Inappropriate Conduct (supported by two specifications). *Id*. at 8-13. On March 13, 2014, the deciding official imposed the removal, sustaining the charges and all but four of the specifications. *Id.* at 5-6.

¶32 The administrative judge weighed the *Carr* factors and concluded that the agency met its burden of showing that it would have detailed and removed the appellant absent her protected disclosure. ID at 18-20. In reaching this conclusion, the administrative judge found that, although the appellant's supervisor had "some motive" to retaliate against her and there was no evidence that the agency treated similarly situated nonwhistleblowers in a similar manner, the strength of the agency's evidence in support of the detail and the removal outweighed the other factors. *Id.* She further found that the appellant failed to identify any motive to retaliate on the part of her second-level supervisor or the deciding official. ID at 18, 20.

¶33 On review, the appellant argues that the administrative judge failed to consider countervailing evidence—namely, the fact that her alleged performance deficiencies arose immediately after her supervisor learned of her disclosures. PFR File, Tab 4 at 15-18. We disagree that the administrative judge failed to consider the chronology of events. To the contrary, as noted above, she found that the appellant established that her disclosures were a contributing factor in the personnel actions by virtue of the knowledge/timing test.[11] ID at 15-16. Once the

_____

[11] On review, the appellant argues that the administrative judge erred in finding that her supervisor became aware of her disclosure regarding improper hiring in 2013. PFR File, Tab 4 at 17. The appellant asserts that this error is material because, contrary to the administrative judge's finding, her "alleged performance problems did not predate her protected disclosure or [her supervisor's] learning about her protected disclosure." *Id.* Although the administrative judge noted that the appellant's supervisor submitted a sworn declaration stating that she became aware of the appellant's disclosure "when there was an EEO investigation into the matter, which would be sometime in 2013," she nonetheless found that the disclosure was a contributing factor in the personnel actions. ID at 13, 15-16. Therefore, any error regarding the date the appellant's supervisor learned of the appellant's protected disclosure did not affect the appellant's substantive

burden shifts to the agency to show by clear and convincing evidence that it would have taken the same personnel actions in the absence of the disclosures, however, the temporal proximity between the disclosures and the personnel actions is not dispositive. Rather, as stated above, the Board generally weighs the *Carr* factors to determine whether the agency has met its burden by clear and convincing evidence. *See Chavez*, 120 M.S.P.R. 285, ¶ 28.

¶34    The appellant also argues that the administrative judge erred in finding that the agency's evidence in support of the removal action was strong because she received a fully successful rating on her detail and rebutted all of the charges in her reply to the proposed removal, and because most of the specifications in Charge D (careless workmanship) could not be true. PFR File, Tab 4 at 18-19, Tab 7 at 8 (citing IAF, Tab 11 at 230-40). We have considered these arguments but find that they provide no basis to disturb the administrative judge's well-reasoned determination that the agency had strong evidence to support the removal action. ID at 18-20; *see Ray v. Department of the Army*, 97 M.S.P.R. 101, ¶ 28 (2004) (finding that, even though some specifications were not sustained, the agency had strong evidence to support its decision to remove the appellant when, among other things, several specifications involved providing false information and several specifications were supported by documentary evidence or sworn statements), *aff'd*, 176 F. App'x 110 (Fed. Cir. 2006) (Table). As noted in the initial decision, the agency premised the appellant's removal on numerous instances of misconduct and provided supporting emails, reports of contact, timecard exceptions, schedules, and declarations signed under penalty of perjury. ID at 18-20; IAF, Tab 11 at 40-45, 47-57, 121-228. Moreover, even if we did not consider the specifications underlying Charge D, we find that the sustained specifications in Charges A, B, C, and E constitute strong evidence that

---

rights. *See Panter v. Department of the Air Force*, 22 M.S.P.R. 281, 282 (1984) (holding that an adjudicatory error that is not prejudicial to a party's substantive rights provides no basis for reversing an initial decision).

the appellant committed serious misconduct as to warrant removal. IAF, Tab 7 at 8-11.

¶35     The appellant next challenges the administrative judge's findings that her supervisor's motive to retaliate was outweighed by the strength of the agency's evidence and that the deciding official and her second-level supervisor had no motive to retaliate. PFR File, Tab 4 at 19-20, Tab 7 at 8-9. Although the administrative judge found that the appellant's supervisor had only "some motive" to retaliate, we modify the initial decision to find that she had a strong motive to retaliate based on the appellant's protected disclosure accusing her of improper hiring practices. *See Ayers*, 123 M.S.P.R. 11, ¶ 29 (finding that, based on the appellant's disclosure that her supervisor was harassing her, the appellant's supervisor had a clear and strong motive to retaliate). Furthermore, we modify the initial decision to find that, although the appellant did not identify a motive on the part of her second-level supervisor, he may have had a retaliatory motive because he supervised the appellant's supervisor and, therefore, the appellant's criticisms of her reflected on his capacity as a manager. *Id*. In addition, we modify the initial decision to find that the strong motive to retaliate on the part of the appellant's supervisor, the proposing official, may be imputed to the deciding official. *See Chambers v. Department of the Interior*, 116 M.S.P.R. 17, ¶ 58 (2011). However, even assuming that the deciding official and the second-level supervisor knew of the appellant's disclosures, we find weak evidence of a retaliatory motive on their part.[12] *See Runstrom v. Department of Veterans*

_____

[12] In a declaration signed under penalty of perjury, the deciding official attested that she had no knowledge of the appellant's disclosures. IAF, Tab 11 at 108-09. Although the appellant's second-level supervisor stated in a declaration signed under penalty of perjury that he did not recall that the appellant disclosed to him concerns regarding her supervisor's improper hiring practices, *id.* at 42, the administrative judge found that his lack of recollection was insufficient to rebut the appellant's more specific claim that she made the disclosures to him in January or February 2012, ID at 13. In any event, although the appellant's second-level supervisor agreed with her supervisor's decision to place her on a counseling program, *id.* at 43, and made two changes to the appellant's temporary assignment, IAF, Tab 7 at 15, 17, he did not take or direct either of the personnel actions at issue in this appeal.

*Affairs*, 123 M.S.P.R. 169, ¶ 15 (2016). Further, there is not much of a professional motive to retaliate on the part of the agency. *Robinson v. Department of Veterans Affairs*, 923 F.3d 1004, 1019 (Fed. Cir. 2019).

¶36 Regarding the third *Carr* factor, the administrative judge found no evidence showing that the agency took similar actions against similarly situated nonwhistleblowers. ID at 20. The parties do not challenge this finding on review. PFR File, Tabs 4, 6-7. Nonetheless, we have reviewed the record and agree that the agency has failed to provide any information or evidence regarding its treatment of similarly situated nonwhistleblowers for the purposes of a *Carr*-factor analysis. IAF, Tabs 5, 7, 11, 13; PFR File, Tab 6. Although the administrative judge did not explicitly state how the absence of any evidence regarding *Carr* factor three weighed into her *Carr*-factor analysis, she appeared to find that it weighed against the agency to some degree. ID at 20. We agree that, under the circumstances present here, the agency's failure to produce any evidence regarding *Carr* factor three weighs slightly against it.[13] *See Whitmore*, 680 F.3d at 1374 (stating that an agency is required to come forward with "all reasonably pertinent evidence relating to *Carr* factor three" and that "[f]ailure to do so may be at the agency's peril"); *see also Miller v. Department of Justice*, 842 F.3d 1252, 1262 (Fed. Cir. 2016).

---

[13] The appellant argues, for the first time on review, that the agency failed to rebut her assertions of disparate treatment. PFR File, Tab 4 at 20. In particular, she argues that she informed the deciding official in her reply to the proposed removal that "timecards are known to be a universal problem for all supervisors and that she was being held to a different standard and punished more harshly than other supervisors." *Id.* Generally, the Board will not consider an argument raised for the first time on review absent a showing that it is based on new and material evidence not previously available despite the party's due diligence. *Banks v. Department of the Air Force*, 4 M.S.P.R. 268, 271 (1980). Here, the appellant has provided no explanation for her failure to raise this argument below, and we find no reason to consider it for the first time on review. Even if we were to consider it, however, the appellant has failed to provide any information regarding the identity or whistleblower status of these alleged other supervisors, and we therefore find that her vague allegations would not alter our analysis of the *Carr* factors.

¶37 Nonetheless, we agree with the administrative judge that the strength of the agency's evidence in support of the detail and the removal outweighs the other *Carr* factors. ID at 18-20. As noted in the initial decision, the counseling program/PIP review notes reflect numerous problems with the appellant's performance. ID at 18; IAF, Tab 13 at 12-15. However, the appellant failed to make a good faith effort to improve her performance and refused to attend the counseling program meetings in June, July, or August 2012 because her supervisor did not allow her to record the meetings or have a human resources witness.[14] IAF, Tab 11 at 92, 174-75. She has not alleged that she was entitled to record the meetings or to have a witness, nor has she alleged that she feared for her personal safety or another reasonable basis for her decision not to attend the meetings without a recording or a witness. Moreover, the memorandum informing her of the temporary assignment stated that her priority during the detail was to complete performance appraisals and proficiencies that were overdue, as well as proficiencies that were due in coming months. IAF, Tab 7 at 19. The appellant has not disputed the agency's assertion that she was behind on these duties. Furthermore, as discussed above, the sustained specifications in Charges A, B, C, and E constitute strong evidence to support the agency's removal action. IAF, Tab 7 at 8-11.

¶38 Considering the record as a whole, we agree with the administrative judge's finding that the agency has shown by clear and convincing evidence that it would have taken the same personnel actions in the absence of the appellant's protected disclosure. ID at 18-20.

---

[14] According to the appellant, she was on medical leave between September and November 2012. IAF, Tab 11 at 92.

**NOTICE OF APPEAL RIGHTS**[15]

The initial decision, as supplemented by this Final Order, constitutes the Board's final decision in this matter. 5 C.F.R. § 1201.113. You may obtain review of this final decision. 5 U.S.C. § 7703(a)(1). By statute, the nature of your claims determines the time limit for seeking such review and the appropriate forum with which to file. 5 U.S.C. § 7703(b). Although we offer the following summary of available appeal rights, the Merit Systems Protection Board does not provide legal advice on which option is most appropriate for your situation and the rights described below do not represent a statement of how courts will rule regarding which cases fall within their jurisdiction. If you wish to seek review of this final decision, you should immediately review the law applicable to your claims and carefully follow all filing time limits and requirements. Failure to file within the applicable time limit may result in the dismissal of your case by your chosen forum.

Please read carefully each of the three main possible choices of review below to decide which one applies to your particular case. If you have questions about whether a particular forum is the appropriate one to review your case, you should contact that forum for more information.

**(1) Judicial review in general**. As a general rule, an appellant seeking judicial review of a final Board order must file a petition for review with the U.S. Court of Appeals for the Federal Circuit, which must be received by the court within **60 calendar days** of the date of issuance of this decision. 5 U.S.C. § 7703(b)(1)(A).

If you submit a petition for review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

---

[15] Since the issuance of the initial decision in this matter, the Board may have updated the notice of review rights included in final decisions. As indicated in the notice, the Board cannot advise which option is most appropriate in any matter.

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C. 20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov. Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit. The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

**(2) Judicial or EEOC review of cases involving a claim of discrimination**. This option applies to you only if you have claimed that you were affected by an action that is appealable to the Board and that such action was based, in whole or in part, on unlawful discrimination. If so, you may obtain judicial review of this decision—including a disposition of your discrimination claims—by filing a civil action with an appropriate U.S. district court (*not* the U.S. Court of Appeals for the Federal Circuit), within **30 calendar days** after you receive this decision. 5 U.S.C. § 7703(b)(2); *see Perry v. Merit Systems Protection Board*, 582 U.S. 420 (2017). If you have a representative in this case, and your representative receives this decision before you do, then you must file with the district court no later than **30 calendar days** after your representative receives this decision. If the action involves a claim of discrimination based on race, color, religion, sex, national origin, or a disabling condition, you may be entitled to representation by a court-appointed lawyer and to waiver of any

requirement of prepayment of fees, costs, or other security.  *See* 42 U.S.C. § 2000e-5(f) and 29 U.S.C. § 794a.

Contact information for U.S. district courts can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

Alternatively, you may request review by the Equal Employment Opportunity Commission (EEOC) of your discrimination claims only, excluding all other issues.  5 U.S.C. § 7702(b)(1).  You must file any such request with the EEOC's Office of Federal Operations within **30 calendar days** after you receive this decision.  5 U.S.C. § 7702(b)(1).  If you have a representative in this case, and your representative receives this decision before you do, then you must file with the EEOC no later than **30 calendar days** after your representative receives this decision.

If you submit a request for review to the EEOC by regular U.S. mail, the address of the EEOC is:

Office of Federal Operations
Equal Employment Opportunity Commission
P.O. Box 77960
Washington, D.C.  20013

If you submit a request for review to the EEOC via commercial delivery or by a method requiring a signature, it must be addressed to:

Office of Federal Operations
Equal Employment Opportunity Commission
131 M Street, N.E.
Suite 5SW12G
Washington, D.C.  20507

**(3) Judicial review pursuant to the Whistleblower Protection Enhancement Act of 2012**.  This option applies to you only if you have raised claims of reprisal for whistleblowing disclosures under 5 U.S.C. § 2302(b)(8) or other protected activities listed in 5 U.S.C. § 2302(b)(9)(A)(i), (B), (C), or (D).  If so, and your judicial petition for review "raises no challenge to the Board's

disposition of allegations of a prohibited personnel practice described in section 2302(b) other than practices described in section 2302(b)(8), or 2302(b)(9)(A)(i), (B), (C), or (D)," then you may file a petition for judicial review either with the U.S. Court of Appeals for the Federal Circuit or any court of appeals of competent jurisdiction.[16]  The court of appeals must <u>receive</u> your petition for review within **60 days** of the <u>date of issuance</u> of this decision.  5 U.S.C. § 7703(b)(1)(B).

If you submit a petition for judicial review to the U.S. Court of Appeals for the Federal Circuit, you must submit your petition to the court at the following address:

U.S. Court of Appeals
for the Federal Circuit
717 Madison Place, N.W.
Washington, D.C.  20439

Additional information about the U.S. Court of Appeals for the Federal Circuit is available at the court's website, www.cafc.uscourts.gov.  Of particular relevance is the court's "Guide for Pro Se Petitioners and Appellants," which is contained within the court's Rules of Practice, and Forms 5, 6, 10, and 11.

If you are interested in securing pro bono representation for an appeal to the U.S. Court of Appeals for the Federal Circuit, you may visit our website at http://www.mspb.gov/probono for information regarding pro bono representation for Merit Systems Protection Board appellants before the Federal Circuit.  The Board neither endorses the services provided by any attorney nor warrants that any attorney will accept representation in a given case.

---

[16] The original statutory provision that provided for judicial review of certain whistleblower claims by any court of appeals of competent jurisdiction expired on December 27, 2017.  The All Circuit Review Act, signed into law by the President on July 7, 2018, permanently allows appellants to file petitions for judicial review of MSPB decisions in certain whistleblower reprisal cases with the U.S. Court of Appeals for the Federal Circuit or any other circuit court of appeals of competent jurisdiction. The All Circuit Review Act is retroactive to November 26, 2017.  Pub. L. No. 115-195, 132 Stat. 1510.

Contact information for the courts of appeals can be found at their respective websites, which can be accessed through the link below:

http://www.uscourts.gov/Court_Locator/CourtWebsites.aspx.

*Jennifer Everling*

FOR THE BOARD:                    _____
                                  Jennifer Everling
                                  Acting Clerk of the Board

Washington, D.C.