NOTE: This disposition is nonprecedential.

# United States Court of Appeals for the Federal Circuit

---

**DOUGLAS A. ALARID,**
*Petitioner*

**v.**

**DEPARTMENT OF THE ARMY,**
*Respondent*

---

2023-1886

---

Petition for review of the Merit Systems Protection Board in No. SF-0752-14-0256-B-2.

---

Decided: December 4, 2024

---

DOUGLAS ALARID, Union City, CA, pro se.

JANA MOSES, Commercial Litigation Branch, Civil Division, United States Department of Justice, Washington, DC, for respondent. Also represented by BRIAN M. BOYNTON, TARA K. HOGAN, PATRICIA M. MCCARTHY.

---

Before MOORE, *Chief Judge*, TARANTO, *Circuit Judge*, and SCHROEDER, *District Judge*.[1]

PER CURIAM.

In 2013, the Army removed Douglas A. Alarid from his position as a police officer after finding that he had engaged in misconduct involving a conspiracy to purchase and distribute an unauthorized federal police badge and involving the manufacture and distribution of an unauthorized federal police identification (ID) card. The Merit Systems Protection Board (Board) sustained the removal. *Alarid v. Department of the Army*, No. SF-0752-14-0256-B-2, 2023 WL 2482656, at *1 (¶ 1) (M.S.P.B. Mar. 13, 2023) (*2023 Board Order*), adopting, as Board decision, *Alarid v. Department of the Army*, No. SF-0752-14-0256-B-2, 2016 WL 6837435 (M.S.P.B. Nov. 14, 2016) (*Board Decision*). Mr. Alarid timely petitioned for review by this court. We affirm.

I

Mr. Alarid was working for the Army as a Police Officer at the Camp Parks police department when the events underlying the present appeal occurred. In 2011 and 2012, the Camp Parks police department received "several threatening letters and packages" and anonymous letters containing emails about Mr. Alarid's involvement in unlawful police-badge purchases and ID-card manufacturing. SAppx198.[2] Richard DeOcampo, who had been an Army police officer until he agreed to resign in

---

[1]    Honorable Robert W. Schroeder III, District Judge, United States District Court for the Eastern District of Texas, sitting by designation.

[2]    "SAppx" refers to the Supplemental Appendix submitted by the Respondent.

2011, was arrested in mid-2012 in connection with those mailings.

When arrested, Mr. DeOcampo had with him an unauthorized Camp Parks police ID card and a police flat badge. Earlier, in the 2011 settlement agreement for Mr. DeOcampo to resign, the Army had agreed to provide Mr. DeOcampo with a police ID card that would state the period during which he had worked as a Camp Parks police officer on the back. The ID card that was recovered from Mr. DeOcampo in mid-2012, however, contained unauthorized language on the back stating that he was allowed to carry firearms, make arrests, and serve warrants.

The 2011–12 mailings also led to an internal investigation of Mr. Alarid by then-Chief of Police Morningstar, then-Deputy Chief Chappell, and then-Detective Hunt. Chief Morningstar was replaced by Chief Lovett, and in October 2013, Chief Lovett issued a Notice of Proposed Removal of Mr. Alarid based on two charges: (1) that Mr. Alarid had conspired with Mr. DeOcampo to purchase unauthorized federal police badges and to distribute the badges among themselves, in violation of 18 U.S.C. § 371, and (2) that Mr. Alarid had manufactured an unauthorized federal police ID card for Mr. DeOcampo, in violation of 18 U.S.C. § 701. SAppx197–202. Mr. Alarid responded by denying both charges and asserting that the removal proposal was rooted in reprisal for several grievances that he, as vice president of the police union, had brought against then-Chief Morningstar on behalf of other employees. SAppx190–95. In December 2013, the deciding official, Director of Emergency Services Walker, found that both charges were supported by a preponderance of evidence and warranted Mr. Alarid's removal from his position. SAppx177–88.

Mr. Alarid appealed to the Board. In March 2015, the assigned Board administrative judge (AJ) issued an initial

decision, *Alarid v. Department of the Army*, No. SF-0752-14-0256-I-1, 2015 WL 1539301 (M.S.P.B. Mar. 30, 2015) (*2015 Initial Decision*); SAppx24–39, affirming the removal. The AJ determined that the Army had proven both charges by a preponderance of the evidence and that Mr. Alarid failed to carry his burden of proving the affirmative defense of retaliation for protected equal employment opportunity activity. *2015 Initial Decision*, at 2–14.[3] The AJ also found that the Army had shown that a nexus existed between Mr. Alarid's actions and his removal to promote the efficiency of the service and that removal was the maximum reasonable penalty. *Id.* at 15–16.

Mr. Alarid petitioned the full Board for review. In August 2015, the Board determined that the AJ had misconstrued Mr. Alarid's affirmative defenses—which were accurately understood as reprisal against union-related activities in violation of 5 U.S.C. § 2302(b)(9)(B) and reprisal against whistleblowing in violation of 5 U.S.C. § 2302(b)(8)—and failed to inform Mr. Alarid of the burdens of proof on those defenses. *Alarid v. Department of Army*, 122 M.S.P.R. 600, 605–09 (¶¶ 7–15), 610–11 (¶ 18) (2015) (*2015 Board Decision*); SAppx50–57. The Board also ruled that the AJ had failed to consider Mr. Alarid's allegation of a due process violation. *2015 Board Decision*, at 609–10 (¶¶ 16–17). Accordingly, the Board remanded the matter to the AJ. *Id.* at 610–11 (¶ 18).

On remand, the AJ held a supplementary hearing on March 3, 2016, and issued a new initial decision in

---

[3]    For the *2015 Initial Decision* and the *Board Decision*, we cite the page numbers on the AJ opinions in the Board file. *See Alarid v. Department of the Army*, No. SF-0752-14-0256-I-1, Initial Appeal File, Tab 41 (M.S.P.B.) (*2015 Initial Decision*); *Alarid v. Department of the Army*, No. SF-0752-14-0256-B-2, *id.*, Refiled Remand File, Tab 5 (*Board Decision*).

November 2016—which we will call the *Board Decision* because the full Board, in 2023, adopted it as such. *Board Decision*; SAppx69–101. The AJ again found that the Army had proven the two charges, that a nexus to the efficiency of the service existed, and that the penalty of removal was reasonable. *Board Decision*, at 2–12, 25–26. The AJ then determined that Mr. Alarid had neither established a violation of due process rights nor proven his affirmative defenses of reprisal for union activity or whistleblowing. *Id.* at 13–25.

Regarding reprisal for participation in union activity, the AJ first noted that the Army (agency) had conceded that Mr. Alarid had engaged in protected activity under 5 U.S.C. § 2302(b)(9)(B). *Id.* at 18 n.12. Applying the burden-shifting standard set forth in 5 U.S.C. § 1221(e), the AJ then determined that Mr. Alarid had not shown that the proposing official, Chief Lovett, was aware of the protected activity (personally or by imputation) when proposing to remove Mr. Alarid but had shown that the deciding official, Director Walker, had such awareness when deciding to remove him (because Mr. Alarid disclosed the activity in responding to the removal proposal). *Id.* at 20. The AJ then concluded that the agency nonetheless prevailed because it had shown by clear and convincing evidence that it would have taken the removal action in the absence of the protected union activity. *Id.* at 21.

Regarding reprisal for whistleblowing, the AJ determined that Mr. Alarid had been involved in filing three complaints that constituted protected disclosures under 5 U.S.C. § 2302(b)(8). *Id.* at 24. The AJ noted, however, that "Chief Lovett and [Director] Walker testified that they were unaware of the appellant having filed the [three complaints], and there is no evidence to the contrary." *Id.* The AJ also noted that Mr. Alarid had not mentioned those complaints in responding to the removal proposal, even though he had discussed his union activity in that response. *Id.* Accordingly, the AJ concluded that

Mr. Alarid had not shown that the proposing or deciding official had knowledge of his protected disclosures or (therefore) that they contributed to his removal. *Id.*

Mr. Alarid petitioned for review. On March 13, 2023, the full Board issued a final order, with an accompanying opinion reviewing the AJ decision point by point. *2023 Board Order*; SAppx1–18. The Board denied the petition for review and affirmed the AJ's 2016 decision, which, the Board declared, "is now the Board's final decision." *2023 Board Order*, at \*1 (¶ 1). Mr. Alarid timely petitioned for review by this court. We have jurisdiction under 28 U.S.C. § 1295(a)(9) and 5 U.S.C. § 7703(b)(1)(A).

## II

We may set aside the Board's decision only if it is "(1) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law; (2) obtained without procedures required by law, rule, or regulation having been followed; or (3) unsupported by substantial evidence." 5 U.S.C. § 7703(c). The petitioner bears the burden of establishing reversible error in the Board's final decision. *Sistek v. Department of Veterans Affairs*, 955 F.3d 948, 953 (Fed. Cir. 2020). We review the Board's legal decisions without deference and its findings of fact for substantial evidence. *McIntosh v. Department of Defense*, 53 F.4th 630, 638 (Fed. Cir. 2022). "Substantial evidence consists of 'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Frederick v. Department of Justice*, 73 F.3d 349, 352 (Fed. Cir. 1996) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). We conclude that Mr. Alarid has not presented any argument that warrants setting aside the Board decision.

## A

To remove an employee, the government must prove, by a preponderance of the evidence, that "(1) the charged

misconduct occurred, (2) there is a nexus between what the employee did and disciplining the employee to promote the efficiency of the service, and (3) the particular penalty is reasonable." *Hansen v. Department of Homeland Security*, 911 F.3d 1362, 1366 (Fed. Cir. 2018) (first citing *Pope v. U.S. Postal Service*, 114 F.3d 1144, 1147 (Fed. Cir. 1997); and then citing *Hale v. Department of Transportation, Federal Aviation Administration*, 772 F.2d 882, 885 (Fed. Cir. 1985)).  Mr. Alarid challenges the Board's ruling on those elements.

1

Mr. Alarid challenges numerous factual findings made by the Board in finding that the Army proved its charges. *See 2023 Board Order*, at *1–3 (¶¶ 1–8); *Board Decision*, at 2–12.  He argues that the Board should have found that he had not admitted to wrongdoing, that he had not created the ID card he was accused of creating, that he did not know that the ID card he did prepare for Mr. DeOcampo was unauthorized, and that he did not know that the purchase of a police badge for Mr. DeOcampo was unauthorized, among other things.  He also contends that the Board should not have relied on the testimony of the deciding official, Director Walker, or the testimony of former Chief Morningstar and former Deputy Chief Chappell.  We reject these challenges.

Mr. Alarid's arguments rest on disagreement with the Board's decision to credit the testimony of the agency witnesses over the conflicting testimony of Mr. Alarid and his witnesses in making its factual findings.  But the crediting of the agency witnesses in this case reflected the AJ's demeanor assessment, and we have held that "[t]he determination of the credibility of the witnesses is within the discretion of the presiding official who heard their testimony and saw their demeanor." *Griessenauer v. Department of Energy*, 754 F.2d 361, 364 (Fed. Cir. 1985); *see also Kahn v. Department of Justice*, 618 F.3d 1306, 1313

(Fed. Cir. 2010) (stating that "an evaluation of witness credibility is within the discretion of the Board and that, in general, such evaluations are 'virtually unreviewable' on appeal" (quoting *King v. Department of Health & Human Services*, 133 F.3d 1450, 1453 (Fed. Cir. 1998))).   In the present case, the AJ considered the relevant evidence, including the evidence in Mr. Alarid's favor, and explained the resulting credibility determinations.   Mr. Alarid has not met the high standard for disturbing the credibility determinations.

The evidence besides demeanor provides no basis for disturbing the Board's factual findings, which are supported by substantial evidence.   Regarding the charge of conspiracy to purchase and distribute an unauthorized federal police badge, the Board had before it Mr. Alarid's testimony (admitting that he ordered the badge for Mr. DeOcampo but arguing that he thought it was permissible to order the badge because it was commemorative), the testimony of several police officers (stating that the "flat" badges at issue were carried by officers for off-duty identification and that they needed a letter of authorization from the Chief to order a flat badge), the testimony of a sales representative for the badge vendor (stating that the badge Mr. Alarid ordered for Mr. DeOcampo was not marked as commemorative, nor was it marked as being for a retired officer), and records of emails between Mr. Alarid, Mr. DeOcampo, and that sales representative. *See Board Decision*, at 10–12; SAppx233–57, 1293–1304, 1330–39, 1349–50, 1416–29.   This was substantial evidence.

Regarding the charge of making an unauthorized federal police ID card, the Board had before it, among other things, Mr. Alarid's testimony identifying the unauthorized ID card recovered from Mr. DeOcampo as the ID card he made.   *See Board Decision*, at 4; SAppx272 (ID-card images), 1417–18 (Mr. Alarid's testimony).   The Board noted Mr. Alarid's testimony that he had been directed to

make a card by Chief Morningstar pursuant to Mr. DeOcampo's 2011 settlement agreement and had never been shown the settlement agreement, and the Board observed that it was unclear what instruction had been given to Mr. Alarid regarding the card. *Board Decision*, at 4–7. The Board found, however, that Mr. Alarid should have known what language was—and was not—allowed on the backs of the cards, and that finding was sufficiently supported by the testimony of other officers (stating that Mr. Alarid was responsible for making most of the ID cards for Camp Parks police), the lack of evidence that Chief Morningstar had personally reviewed or approved the card, and the lack of evidence that Chief Morningstar had ever approved the use of the expansive language on the back of Mr. DeOcampo's card. *Id.* at 8–10; SAppx1297, 1330–31.

We are not persuaded that the Board lacked substantial-evidence support, considering the record as a whole, for its finding that the Army had proven both charges against Mr. Alarid.

2

Mr. Alarid argues that the Board erred in concluding that the Army had shown that there was a nexus between what he did and removing him to promote the efficiency of the service. He contends that his alleged misconduct occurred off-duty; that his actions were unknown to the press, public, or other government agencies; and that Director Walker presented no evidence to support his assertion that Mr. Alarid's actions affected the efficiency of the service. We reject this challenge.

An agency can prove the required nexus by showing that an employee's conduct led to a "reasonable loss of trust and confidence" in the employee. *Brook v. Corrado*, 999 F.2d 523, 527 (Fed. Cir. 1993); *Kruger v. Department of Justice*, 32 M.S.P.R. 71, 74 (1987). The Board so found in the present case. *Board Decision*, at 25. Neither logic nor cited authority requires that the agency's loss of trust and

confidence in the employee occur due to on-duty or public misconduct.

The Board's finding that Mr. Alarid's conduct led to the Army's loss of trust and confidence in him—because Mr. Alarid's actions were "directly antithetical to his duties and the agency's mission," as Mr. Alarid was a Police Officer who "was charged with enforcement of Federal criminal laws such as the ones he violated here," *Board Decision*, at 25—is supported by substantial evidence. Director Walker stated, in the removal decision letter, that Mr. Alarid's "unlawful" conduct was "contradictory to expectations of a Federal Police Officer" who is "held to a higher standard," as an officer's "duties include the enforcement of Federal criminal laws involving persons and property, and the protection of government property and facilities." SAppx185–86. Director Walker added that Mr. Alarid did not acknowledge his actions or Mr. DeOcampo's harassment of him until Mr. DeOcampo revealed them to the agency. SAppx186. And Director Walker stated that he had lost trust and confidence in Mr. Alarid even while recognizing Mr. Alarid's good record in his eight years of service. *Id.* We see no reversible error in the Board's finding on this issue.

3

We similarly see no error in the Board's determination that removal was a reasonable penalty, after the Board properly sustained the Army's charges. *Board Decision*, at 26. Director Walker determined, in light of the conduct at issue, that "alternative measures" such as "suspension or demotion" would be "detrimental to this organization," as alternative measures could create a "hostile environment for others" and "[o]fficers must be able to trust each other in the office and out on the field." SAppx187. That was a reasonable determination. *See Watson v. Department of Justice*, 64 F.3d 1524, 1530 (Fed. Cir. 1995) ("Law enforcement officers are held to a higher

standard of conduct than are other federal employees. . . ."); *Lawton v. Department of Veterans Affairs*, 53 M.S.P.R. 153, 158 (1992) (similar); *Dikiy v. Department of Treasury*, 23 M.S.P.R. 454, 457 (1984) (similar). We have no basis to overturn the penalty determination. *See Mings v. Department of Justice*, 813 F.2d 384, 390 (Fed. Cir. 1987) ("This court . . . will not disturb a choice of penalty within the agency's discretion unless the severity of the agency's action appears totally unwarranted in light of all the factors."); *see also Lachance v. Devall*, 178 F.3d 1246, 1251 (Fed. Cir. 1999) (collecting cases).

B

Mr. Alarid argues the Board's decision regarding reprisal for whistleblowing and union-related activities should be set aside. We disagree.

The framework for addressing assertions of reprisal under 5 U.S.C. § 2302(b)(8) or § 2302(b)(9), whether as an affirmative defense to a removal action or in an individual-right-of-action appeal to the Board, is well established. First, an employee must show via a preponderance of the evidence that a protected disclosure was a "contributing factor" to an adverse employment decision. *See Kewley v. Department of Health & Human Services*, 153 F.3d 1357, 1361 (Fed. Cir. 1998). One way that an employee may make this showing is by meeting the "knowledge/timing test": an employee may show that "(A) the official taking the personnel action knew of the disclosure or protected activity; and (B) the personnel action occurred within a period of time such that a reasonable person could conclude that the disclosure or protected activity was a contributing factor in the personnel action." 5 U.S.C. § 1221(e)(1); *Kewley*, 153 F.3d at 1361–62. If the knowledge/timing test is satisfied, the burden then shifts to the agency to "demonstrate[] by clear and convincing evidence that it would have taken the same personnel action in the absence

of such disclosure." 5 U.S.C. § 1221(e)(2); *Kewley*, 153 F.3d at 1361–63. To determine whether the agency has carried its burden, the Board considers "the strength of the agency's evidence in support of its personnel action; the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision; and any evidence that the agency takes similar actions against employees who are not whistleblowers but who are otherwise similarly situated." *Carr v. Social Security Administration*, 185 F.3d 1318, 1323 (Fed. Cir. 1999).

Here, the AJ applied the established framework. The AJ first found that Mr. Alarid had in fact met the knowledge/timing test because the deciding official, Director Walker, knew of the protected activity when making the removal decision, as Mr. Alarid had told him about it in responding to the removal proposal. *See Board Decision*, at 20; SAppx193. The AJ then turned to the *Carr* factors and found, in relevant part, that the strength of any motive to retaliate on the part of Chief Lovett or of Director Walker was at best weak, because the evidence in the record showed only that former Chief Morningstar and former Deputy Chief Chappell may have had animosity towards Mr. Alarid. *Board Decision*, at 21. The AJ also found that there is "no evidence" that Mr. Alarid's protected activities were "personally directed at either of [Chief Lovett or Director Walker]." *Id.*

On appeal, Mr. Alarid first argues that Director Walker constructively knew of the protective activity, Petitioner's Informal Br. 13, but this argument addresses a piece of the reprisal-analysis framework already decided in Mr. Alarid's favor. The AJ found that Director Walker knew of Mr. Alarid's protected union activity when deciding on the proposed removal and, under the knowledge/timing test, that the protected activity was a contributing factor in his removal. *Board Decision*, at 20. To the extent, then, that Mr. Alarid argues about imputing a mental state of former

Chief Morningstar or former Deputy Chief Chappell to Director Walker, the argument can only be about a retaliatory motive relevant under the second *Carr* factor: "the existence and strength of any motive to retaliate on the part of the agency officials who were involved in the decision." *Carr*, 185 F.3d at 1323. But Mr. Alarid has not shown reversible error by the Board on this step of the reprisal analysis.

The Board's finding that Director Walker lacked retaliatory motive was supported by substantial evidence, especially given the wide discretion the Board has regarding credibility determinations (as already noted). The Board reasonably credited Director Walker's testimony that he had never spoken to the former Chief; that the former Deputy Chief had never shared with him any opinion about Mr. Alarid; and that, while he knew Mr. Alarid was a union representative at Camp Parks there, the grievances that reached his level (as Director at Fort Hunter Liggett, which oversees Camp Parks) were filed by the union at that facility, not by Mr. Alarid's union at Camp Parks. *Board Decision*, at 19–20; SAppx1304. There was evidence, moreover, that the former Chief had been on administrative leave starting before Director Walker's arrival at Camp Parks and was decertified as a police officer, pending removal, for a year before issuance of the proposal to remove Mr. Alarid. *Board Decision*, at 21; SAppx179, 197, 1304. And there was no evidence that any of Mr. Alarid's protected activities had been personally directed at Director Walker. *Board Decision*, at 21; SAppx193 (alleging reprisal for grievances filed by Mr. Alarid under former Chief Morningstar).

For those reasons, we see no merit in Mr. Alarid's attack on the Board's implementation of the established reprisal-analysis framework. Nor do we see any merit in his suggestion that the Board should have provided him an individual-right-of-action appeal and corrective action under 5 U.S.C. § 1221. Petitioner's Informal Br. 14–15. He

points to no material difference in the evaluation of the reprisal contentions whether analyzed in an individual-right-of-action appeal or as an affirmative defense to the removal appeal under 5 U.S.C. § 7701. And he is not entitled to corrective action under § 1221(g)(1) if, as here, the Board has properly rejected the reprisal assertion on its merits.

C

Mr. Alarid suggests that the Army should have carried out its investigation of him under Army Regulation (AR) 15-6—which, among other things, requires investigators to be at level GS-13 or above and senior to the person being investigated—rather than relying on two Military Police Investigation (MPI) investigators, one at level GS-7 and one at GS-8, to conduct the investigation. Petitioner Informal Br. 7. But he has not shown error in the AJ's conclusion that "AR 15-6 does not govern" investigations into law-enforcement personnel. *Board Decision*, at 15. The Army regulation that covers the use of MPI investigators and Department of the Army Civilian (DAC) detectives/investigators states that, "[e]xcept as otherwise provided, MPI and DAC detectives/investigators will normally be employed in the following investigations: . . . Allegations against law enforcement personnel, when not within the investigative responsibilities of [U.S. Army Criminal Investigation Command]." AR 190-30, paragraph 4-2 (2005). That regulation permits use of MPI investigators for an investigation, like this one, of a law-enforcement employee. Moreover, AR 15-6 states that its requirements "may be made applicable to investigations or boards that are authorized by another regulation or directive, but *only by specific incorporation by that regulation or directive, or in the memorandum of appointment*," AR 15-6, paragraph 1-5 (2016) (emphasis added), and Mr. Alarid has not pointed to any portion of AR 190-30 or a directive, or the memorandum of appointment,

that would require the use of AR 15-6 procedures in his investigation.

## D

Finally, Mr. Alarid argues that the AJ fell "asleep during much of the Supplemental Hearing" and thereby "violated federal law" and "sections of the MSPB Judges Handbook, and deprived [him] of [his] due process right to a full and fair hearing."  Petitioner's Informal Br. 7; *see also id.* at 6, 8–10; Appendix to Petitioner's Informal Br. at 7–15.  Mr. Alarid identifies only one specific instance of the AJ allegedly falling asleep: during the testimony of Chief Lovett, when Chief Lovett stated that he believed that Chief Morningstar had briefed Director Walker about the investigation.      Petitioner's    Informal    Br.    8;    *see* SAppx1214–15.  We see no reversible error in the Board's rejection of this challenge to the AJ's ruling.  *2023 Board Order*, at *3 (¶¶ 9–10).

The Board determined, first, that Mr. Alarid "did not raise the [AJ's] alleged inattentiveness at any point during the proceedings [before the AJ] or in his written closing argument" and that "failure to object below precludes him from pursuing this argument on review."  *Id.*  Mr. Alarid has not shown error in the finding that he did not raise the matter to the AJ.  *See Alarid v. Department of the Army*, No. SF-0752-14-0256-B-2, Refiled Remand File, Tab 4 (M.S.P.B.) (appellant written closing argument); *id.*, Petition for Review File, Tab 3 at 17–20 (raising the issue for the first time in the Petition for Review).  Nor has he shown error in the Board's insistence that this is the kind of issue that needs to be raised when the alleged problem arises and when contemporaneous remediation is possible.

The Board also found that "the record does not support [Mr. Alarid's] claim that the [AJ] was asleep during testimony," specifically focusing on the allegation that the AJ was sleeping during a portion of Chief Lovett's testimony. *2023 Board Order*, at *3 (¶¶ 9–10).  We see no

reversible error in that finding, which the record supports. The AJ asked the question that elicited Chief Lovett's statement as an answer, and the AJ asked a relevant follow-up question immediately following that answer. SAppx1214. Mr. Alarid provides no other citations to the record for his generalized allegation that the AJ was asleep during "much" of the hearing, Petitioner's Informal Br. 7, and we see no such indication in the transcript of the March 3, 2016 hearing. *See* Transcript of Hearing, *Alarid v. Department of the Army*, No. SF-0752-14-0256-B-1 (M.S.P.B. Mar. 3, 2016).

Mr. Alarid has therefore not shown error—much less prejudicial error—on this ground.

### III

We have considered Mr. Alarid's remaining arguments and find them unpersuasive. We affirm the Board's decision.

The parties shall bear their own costs.

**AFFIRMED**